PAUL J. KELLY, Circuit Judge.
Defendanh-Appellant Shawn Lloyd Hinckley appeals from his conviction for failing to register pursuant to the Sex Offender Registration and Notification Act (“SORNA”), 18 U.S.C. § 2250, enacted July 27, 2006. On appeal, he argues that (1) the indictment was constitutionally defective because it sought to prosecute him for behavior that predated SORNA’s effective date; (2) the application of SORNA in his circumstances violates the Ex Post Facto Clause; (3) he was denied due process because he had no notice that he was *928 required to register under SORNA; (4) Congress’s delegation to the Attorney General in § 16913(d) violates the Non-delegation Doctrine; and (5) SORNA violates the Commerce Clause by punishing activity that does not substantially affect interstate commerce. Our jurisdiction arises under 28 U.S.C. § 1291, and we affirm.

Background

On October 19, 2000, Mr. Hinckley pled guilty to assault in the third degree with sexual motivation in Whatcom County, Washington. The plea arose out of allegations that he had forcible sex with his then live-in, but estranged, girlfriend who was six months’ pregnant with twins. Mr. Hinckley received a sentence of sixty (60) days in jail and twelve (12) months of community supervision, and was informed of his obligation to register as a sex offender in Washington. He was later convicted in March 2004 for failure to register in Washington State and received a sentence of three months. Upon his release on April 21, 2004, Mr. Hinckley registered as a sex offender in Washington.
In December 2005, Mr. Hinckley informed Washington authorities of his intention to move to Vian, Oklahoma, to live with his grandparents. Whatcom County authorities report that Mr. Hinckley was informed of his duty to register as a sex offender with the sheriffs office of the county to which he was moving in Oklahoma. On March 20, 2006, Mr. Hinckley applied for an Oklahoma Identification Card and signed an acknowledgment that he was required to register as a sex offender under Oklahoma law. In August 2006, Mr. Hinckley obtained employment with Mr. David Graham that required him to travel on a daily basis to Arkansas. Then, on January 24, 2007, Mr. Hinckley appeared at the Sallisaw Police Department to report a crime, and authorities discovered that Mr. Hinckley had not registered in Oklahoma. That same day, Mr. Hinckley registered as a sex offender at the Sequoyah County sheriffs office.
On March 14, 2007, federal authorities indicted Mr. Hinckley on one count of violating the Sex Offender Registration and Notification Act (“SORNA”), 18 U.S.C. § 2250. The indictment charged Mr. Hinckley in the Eastern District of Oklahoma as “an individual required to register ... after becoming required to register, [with traveling] in interstate commerce, and ... knowingly failing] to register and update registration as required” during the period March 4, 2004, to January 24, 2007. On March 29, 2007, Mr. Hinckley filed a motion to dismiss the indictment. The district court denied Mr. Hinckley’s motion. Mr. Hinckley then entered a conditional plea of guilty, reserving his right to appeal the district court’s order denying his motion to dismiss. In December 2007, the district court sentenced him to twenty-four (24) months’ imprisonment and sixty (60) months’ supervised release. Mr. Hinckley now appeals.

Discussion

The issues in this case involve statutory interpretations of and constitutional challenges to SORNA. We review such issues de novo, “ ‘interpreting] the words of the statute in light of the purposes Congress sought to serve.’ ” Wright v. Fed. Bureau of Prisons, 451 F.3d 1231, 1233-34 (10th Cir.2006) (quoting Rain v. Mullin, 436 F.3d 1168, 1176 (10th Cir.2006) (en banc)); see also Bd. of County Comm’rs, Fremont County, Colorado v. U.S. E.E.O.C., 405 F.3d 840, 847 (10th Cir.2005). We begin with the language of the statute and “read the words of the statute ‘in their context and with a view to their place in the overall statutory scheme.’ ” Wright, 451 F.3d *929 at 1234 (quoting Food and Drug Admin, v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 132-33, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000)).
A. Applicability of SORNA
Mr. Hinckley argues that (1) his indictment is invalid because SORNA had not been enacted or implemented when he was alleged to have violated it; and (2) he was not required to register under SOR-NA until February 28, 2007, when the Attorney General issued an Interim Rule clarifying SORNA’s retroactivity. The district court determined that “it is apparent from the plain language of the statute that SORNA applies to [Mr. Hinckley].” United States v. Hinckley, CR-07-18RAW (E.D. Okla. April 18, 2007) (Order denying Mr. Hinckley’s motion to dismiss the indictment).
SORNA provides, in pertinent part:
(a) In general
A sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student. For initial registration purposes only, a sex offender shall also register in the jurisdiction in which convicted if such jurisdiction is different from the jurisdiction of residence.
(b) Initial registration
The sex offender shall initially register—
(1) before completing a sentence of imprisonment with respect to the offense giving rise to the registration requirement; or
(2) not later than 3 business days after being sentenced for that offense, if the sex offender is not sentenced to a term of imprisonment.
(c) Keeping the registration current
A sex offender shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved pursuant to subsection (a) of this section and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry. That jurisdiction shall immediately provide that information to all other jurisdictions in which the offender is required to register.
(d)Initial registration of sex offenders unable to comply with subsection (b) of this section
The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section.
42 U.S.C. § 16913(a)-(d).
The Attorney General issued his Interim Rule on February 28, 2007, “making it indisputably clear that SORNA applies to all sex offenders (as the Act defines that term) regardless of when they were convicted.” 72 Fed.Reg. 8894, 8896 (Feb. 28, 2007). The Rule states that “SORNA’s direct federal law registration requirements for sex offenders are not subject to any deferral of effectiveness. They took effect when SORNA was enacted on July 27, 2006, and currently apply to all offenders in the categories for which SORNA requires registration.” Id. at 8895.
The courts are split on the meaning of subsection (d), and whether sex offenders who failed to register during the “gap period” between SORNA’s enactment and the Interim Rule have violated the regis *930 tration requirements of subsection (a).[1] Because we find ambiguity in subsection (d), we look to the provision’s title and surrounding context, as well as the Act’s history and purpose to determine its meaning. We find the reasoning of the Eighth Circuit in United States v. May, 535 F.3d 912 (8th Cir.2008), persuasive and adopt it here. We hold that Mr. Hinckley violated SORNA by failing to register as a sex offender in Oklahoma after traveling in interstate commerce.
We begin with a brief discussion of the opposing interpretations of subsection (d) that courts have offered. To focus the discussion, we analyze the decisions of our sister circuits in United States v. Madera, 528 F.3d 852 (11th Cir.2008) (per curiam), and May, 535 F.3d 912. While both cases involve a slightly different fact pattern than Mr. Hinckley’s, their analysis is relevant. Madera involved a defendant who traveled in interstate commerce prior to SORNA’s enactment in July 2006, and was arrested, prosecuted, and convicted prior to the Attorney General’s issuance of the clarifying Interim Rule.[2] Madera, 528 F.3d at 854. May is more analogous to the instant fact pattern, in that it involved a defendant who traveled in interstate commerce after SORNA’s enactment in July 2006, failed to register in the new jurisdiction, and was arrested and convicted after promulgation of the Interim Rule. May, 535 F.3d at 915. The factual background now before us involves a defendant who traveled in interstate commerce after SORNA’s enactment in July 2006, failed to register in the new jurisdiction until January 2007, and was arrested and convicted after promulgation of the Interim Rule.
In Madera, the court relied on the reasoning in United States v. Kapp, 487 F.Supp.2d 536 (M.D.Pa.2007), and concluded that subsection (d) comprises two separate clauses. “The first gives the Attorney General authority to determine whether SORNA applies retroactively to all sex offenders, and the second gives the Attorney General authority to promulgate rules regarding initial registration.” Madera, 528 F.3d at 858. Essentially, the court reads subsection (d) as “contemplating] two groups of sex offenders: (1) past offenders and (2) those unable to initially register under subsection (b).” United States v. Beasley, No. 1:07-CR-115-TCB, *931 2007 WL 3489999, at *5 (N.D.Ga. Oct.10, 2007). The first clause, “ ‘which addresses SORNA’s applicability, only covers the first group: past offenders. Therefore, when the two clauses are read in conjunction, the first clause ... unambiguously provides the Attorney General with authority to define the retrospective applicability of SORNA’s registration requirements to past offenders.’ ” Id. (quoting Kapp, 487 F.Supp.2d at 542). Under this interpretation, sex offenders convicted before July 27, 2006, cannot be held to violate SORNA for acts committed prior to the issuance of the Attorney General’s Interim Rule on retroactivity. See United States v. Gill, 520 F.Supp.2d 1341, 1349 (D.Utah 2007) (holding that SORNA did not apply to a defendant who failed to register in the interim period between enactment and issuance of the Interim Rule); United States v. Patterson, No. 8:07CR159, 2007 WL 2904099 (D.Neb. Sept.21, 2007); United States v. Muzio, No. 4:07CR179, 2007 WL 2159462, at *5 (E.D.Mo. July 26, 2007) (finding “no ambiguity” in the statutory language).
The Madera court relied on the use of the word “shall” in subsection (d) as evidence that “Congress was issuing a directive to the Attorney General specifically to make the determination [of whether SORNA applied retroactively to those convicted prior to July 2006].” Madera, 528 F.3d at 857. In adopting this interpretation, the court rejected the argument urged by the government that subsection (d) “addresses only those offenders unable to comply with the timing requirements for initial registration under [subsection (b) ]” and limits the Attorney General’s authority to promulgating rules pertaining to those sex offenders who are literally “unable to comply” with subsection (b)’s initial registration requirements due to the age of their convictions. Id. at 858; United States v. Roberts, No. 6:07-CR-70031, 2007 WL 2155750 (W.D.Va. July 27, 2007).
In May, the Eighth Circuit took the opposite position and found ambiguity in subsection (d). “Although the word ‘shall’ indicates a congressional directive, the question remains as to what § 16913(d) was specifically directing the Attorney General to regulate.” May, 535 F.3d at 918. The May court held that a defendant who was registered under state law prior to the enactment of SORNA, and therefore not subject to the initial registration requirements in subsections (b) and (d), was required to register under SORNA according to subsection (a). See id. at 918-19 (quoting Roberts, 2007 WL 2155750, at *2); Beasley, 2007 WL 3489999, at *5; see also United States v. Hinen, 487 F.Supp.2d 747, 750 (W.D.Va.2007) (holding that the delegation in subsection (d) applies only to those offenders not required to register under any state law prior to SORNA’s enactment); United States v. Templeton, No. CR-06-291-M, 2007 WL 445481, at *4 (W.D.Okla. Feb.7, 2007) (failing to analyze the text of the statute for ambiguity, but holding that the title of subsection (d) indicates its reference to initial registration only).
In support, the May court relied on the analysis in Beasley, 2007 WL 3489999. In that case, the defendant traveled in interstate commerce in January 2007, failed to register in his new jurisdiction, and was arrested for violating SORNA on March 14, 2007, after issuance of the Interim Rule. The court concluded that subsection (d) was ambiguous “when considered in isolation and out of context,” and stated that “[a]n additional possible meaning of subsection (d) is that past offenders ... are included within (and not a separate group from) the broader category of ‘sex offenders who are unable to comply with subsection (b),’ and it is only as to those *932 ‘sex offenders who are unable to comply with subsection (b)’ that the Attorney General was given authority under subsection (d) to issue clarifying regulations.” Beasley, 2007 WL 3489999, at *6.
In agreement with Beasley, we also find it reasonable that the use of the word “other” to modify the phrase “categories of sex offenders who are unable to comply with subsection (d)” indicates that “offenders convicted prior to the law’s enactment are one of the categories of offenders unable to comply with subsection (b).” Id. at *6 n. 6. Such an interpretation leaves unaltered the ongoing registration requirements under subsections (a) and (c) imposed on all sex offenders. Furthermore, this interpretation does not affect those offenders who were required to register pre-SORNA under state law and therefore are excluded from SORNA’s initial registration obligations in subsection (b) and any related rules promulgated with regard to initial registration under subsection (d). We agree with the Eighth Circuit’s reading, finding that “the language of the statute is broad enough to permit” the Beasley court’s additional possible interpretation. Zuni Pub. Sch. Dist. No. 89 v. Dept. of Educ., 550 U.S. 81, 127 S.Ct. 1534, 1546, 167 L.Ed.2d 449 (2007). Moreover, we find this interpretation more convincing than alternative interpretations in light of the Act’s purpose and history. As the Interim Rule explained, “The SORNA reforms are generally designed to strengthen and increase the effectiveness of sex offender registration and notification for the protection of the public, and to eliminate potential gaps and loopholes under the pre-existing standards by means of which sex offenders could attempt to evade registration requirements or the consequences of registration violations.” 72 Fed.Reg. at 8895. Reading subsection (d) to exclude all previously convicted sex offenders from SORNA’s requirements would, as the Interim Rule explained, exempt “virtually the entire existing sex offender population.” Id. at 8896. Such a result would directly contradict the Act’s stated purpose of establishing “a comprehensive national system for the registration of [sex offenders and offenders against children].” 42 U.S.C. § 16901.[3]
“[Statutory ‘[a]mbiguity is a creature not [just] of definitional possibilities but [also] of statutory context.’ ” Id. at 1546 (quoting Brown v. Gardner, 513 U.S. 115, 118, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994)) (citing Brown & Williamson, 529 U.S. at 132-33,120 S.Ct. 1291). We read a statute as “ambiguous” when it is “capable of being understood by reasonably well-informed persons in two or more different senses.” McGraw v. Barnhart, 450 F.3d 493, 498 (10th Cir.2006) (quoting United States v. Quarrell, 310 F.3d 664, 669 (10th Cir.2002)). If the court finds the statute ambiguous, the court then looks beyond the plain text to resolve the ambiguity, examining legislative intent, overall statutory construction, and relevant subtitles.[4] *933 See U.S. Nat’l Bank of Or. v. Indep. Ins. Agents of Am., Inc., 508 U.S. 439, 113 S.Ct. 2173, 124 L.Ed.2d 402 (1993) (examining the statutory background in addition to the statute’s structure, title, and the language and subject matter of the section in question and the surrounding sections); Zuni Pub. Sch. Dist. No. 89, 127 S.Ct. at 1541-42 (examining the statute’s subject matter, history, and purpose). Because we see ambiguity in the statute, “[t]hat fact requires us to look beyond the language” to the construction of the statute, the context and subtitle of the subsection, and the Attorney General’s Interim Rule comments. Zuni Pub. Sch. Dist. No. 89, 127 S.Ct. at 1546.
As in May, the government argues that subsection (d) refers only to initial registration requirements. In support, the government relies on United States v. Zuniga, No. 4:07CR3156, 2008 WL 2184118, at * 11-12 (D.Neb. May 23, 2008) (Memorandum and Order), which held that subsection (a), not subsection (d), made a defendant’s obligation to register a federal requirement. Finding ambiguity in subsection (d), the Zuniga court analyzed SORNA’s overall statutory scheme and Congress’s primary motivation in enacting it. Not only did that court declare that subsection (a) “unambiguously requires” every sex offender to register, but it also found that “it was Congress’s desire to create a comprehensive and uniform registration system among the states to ensure offenders could not evade requirements by simply moving from one state to another.” Id. at *10, *11 (quoting Hinen, 487 F.Supp.2d at 752-53). Any doubt as to subsection (d)’s limitations were removed when the Attorney General promulgated the Interim Rule as a “precautionary measure” only to clarify the retroactivity of SORNA, not to declare it retroactive. May, 535 F.3d at 919.[5] In addition, subsection (d)’s subheading, “Initial registration of sex offenders unable to comply with subsection (b) of this section,” clearly limits it to the initial registration requirements in subsection (b). We are also persuaded that the purpose of subsection (d) was not to exempt all sex offenders with convictions prior to July 2006 from SOR-NA’s registration requirements, but rather to address then currently unregistered offenders with dated convictions that might not be able to comply with the initial registration requirements — three days after sentencing or prior to completion of the sentence. Id. These factors indicate that the statutory ambiguity should be resolved in favor of the Zuniga, Beasley, and May courts’ interpretation, as it is the only sensible result in light of the Act’s purpose, history, and surrounding language.
The dissent concludes that we must follow a “plain meaning” reading of the Act. Given the obvious inconsistency among the subsection’s subtitle, the statutory language, and the apparent breadth of the statute, we disagree. We have never be *934 fore read statutory language in such a vacuum. In United States National Bank of Oregon v. Independent Insurance Agents of America, Inc., the Supreme Court rejected such a narrow “plain meaning” interpretation: “Over and over we have stressed that in expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy.” 508 U.S. at 455, 113 5.Ct. 2173 (internal quotation marks and alteration omitted); accord Brown & Williamson, 529 U.S. at 132, 120 S.Ct. 1291 (“[A] reviewing court should not confine itself to examining a particular statutory provision in isolation. The meaning — or ambiguity — of certain words or phrases may only become evident when placed in context.”); United Sav. Ass’n of Tex. v. Timbers of Inwood Forest Assocs., Ltd., 484 U.S. 365, 371, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988) (“Statutory construction ... is a holistic endeavor. A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme ... because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law.” (internal citations omitted)).
The plain language of subsection (d) is not nearly so clear as to unambiguously indicate that Congress intended to prohibit application of SORNA to all previously convicted sex offenders. Furthermore, when considered in context, it becomes clear that Congress did not intend to exempt all sex offenders convicted before July 27, 2006, from SORNA’s requirements. Many sex offenders convicted before that date (those still incarcerated or awaiting sentencing) would be able to comply with subsection (b)’s initial registration requirement. There would be no reason for Congress to exempt such sex offenders. Congress was likely concerned with old convictions — offenders who had already served their sentences and never before had been required to register. As the Interim Rule explained, that group of sex offenders presents a logistical problem, one that Congress thought best to allow the Attorney General to resolve. See 72 Fed.Reg. at 8896.[6] Subsection (d) accordingly gives the Attorney General the authority to decide whether these previously unregistered offenders will be required to register, and, if so, what the alternative timing rules will provide.
The dissent completely ignores subsection (d)’s title, which limits its scope to the “Initial registration of sex offenders unable to comply with subsection (b) of this section.” Here, as in National Bank of Oregon, 508 U.S. at 458, 113 S.Ct. 2173, subsection (d)’s title is “supporting evidence” for the inference that the Act’s overall structure and purpose did not intend to exclude all previously convicted sex offenders from the Act’s registration requirements. See also Carter v. United States, 530 U.S. 255, 277 n. 2, 120 S.Ct. 2159, 147 L.Ed.2d 203 (2000) (Ginsburg, J., dissenting) (“A statute’s meaning can be elusive, and its title illuminating, even where a court cannot pinpoint a discrete word or phrase as the source of the ambiguity.”); *935 INS v. Nat’l Ctr. for Immigrants’ Rights, Inc., 502 U.S. 183, 189, 112 S.Ct. 551, 116 L.Ed.2d 546 (1991) (“[T]he title of a statute or section can aid in resolving an ambiguity in the legislation’s text.”).
In sum, the dissent’s conclusion is based on a single clause — “sex offenders convicted before July 27, 2006” — to the exclusion of all other portions of the statute and its purpose. We reject such a reading as contrary to the principles of statutory interpretation. See King v. St. Vincent’s Hosp., 502 U.S. 215, 221, 112 S.Ct. 570, 116 L.Ed.2d 578 (1991) (following “the cardinal rule that a statute is to be read as a whole, since the meaning of statutory language, plain or not, depends on context” (internal citation omitted)); see also Nat’l Bank of Or., 508 U.S. at 454, 113 S.Ct. 2173 (“[T]ext consists of words living a communal existence, ... the meaning of each word informing the others and all in their aggregate taking their purport from the setting in which they are used.” (internal quotation marks and alteration omitted)).
Mr. Hinckley was originally required to register under Washington and Oklahoma law prior to the enactment of SORNA. Because he had already registered, he is not subject to SORNA’s initial registration requirements in subsections (b) or (d); consequently, there is no question regarding SORNA’s applicability between July 2006 and the issuance of the Interim Rule.[7] While Mr. Hinckley’s indictment, which encompasses dates spanning March 2004 through January 2007 may be overbroad,[8] his failure to register in Oklahoma prior to January 2007, which was accompanied by his continued daily interstate travel to Arkansas, constitutes a violation of SORNA.
B. Ex Post Facto Clause
Mr. Hinckley next argues that his prosecution under SORNA violates the Ex Post Facto Clause because it (1) punishes actions that occurred prior to SORNA’s effective date and (2) increases punishment beyond what was in place at the time the crime was committed. In making this argument, he relies on Weaver v. Graham, which defined the ex post facto prohibition as barring Congress and the states from enacting “any law ‘which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed.’ ” 450 U.S. 24, 28, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981) (quoting Cummings v. Missouri, 4 Wall. 277, 325-26, 18 L.Ed. 356 (1866)). Mr. Hinckley further relies upon Colder v. Bull, which prohibits under the Ex Post Facto Clause any law that criminalizes any action “innocent when done” or increases the punishment of a crime beyond the penalty in place at the time the crime was committed. Collins v. Youngblood, 491 U.S. 37, 42, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990) (quoting Colder, 3 U.S. 386, 390, 3 Dall. 386, 1 L.Ed. 648 (1798)). Two elements must be satisfied to find that a law violates the Ex Post Facto Clause: (1) “it must be retrospective, that is, it must apply to events occurring before its enactment,” and (2) “it must disadvan *936 tage the offender affected by it.” Weaver, 450 U.S. at 29, 101 S.Ct. 960 (citing Lindsey v. Washington, 301 U.S. 397, 401, 57 S.Ct. 797, 81 L.Ed. 1182 (1937); Colder v. Bull, 3 U.S. at 390). In other words, Mr. Hinckley claims that (1) he is now being punished for conduct that occurred in 2004, which did not become a crime until 2006, and (2) the only laws in effect at the time of his offense were Oklahoma state statutes and the Jacob Wetterling Act, 42 U.S.C. § 14071, which carried lesser penalties than SORNA.
The district court did not address whether SORNA violates the Ex Post Fac-to Clause; however, we agree with the reasoning of the May court and hold that neither SORNA’s registration requirements nor the criminal penalties attached to non-compliance in § 2250 violate the Ex Post Facto Clause. Relying on Smith v. Doe, 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003), as the government does, we find that the legislative intent expressed in SORNA’s preamble and SORNA’s primary effect satisfy the requirements of the Ex Post Facto Clause.
1. Punishment for Prior Acts
Mr. Hinckley first argues that his indictment for failure to register under § 2250 punishes him for acts committed prior to SORNA’s effective date, and therefore violates the Ex Post Facto Clause. Because we view the failure to register as a continuing offense, we find no merit in Mr. Hinckley’s claim.
The Supreme Court, in Toussie v. United States, 397 U.S. 112, 115, 90 S.Ct. 858, 25 L.Ed.2d 156 (1970), found that an offense is “continuing” when indicated by the “explicit language of the substantive criminal statute,” or when “the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one.” An interpretation of the sex offender registration requirement that defines it in any way other than as a continuing offense would result in absurdity. As the Western District of Virginia points out, “It would be illogical for members of Congress to express concern that thousands of sex offenders who were required to register under state law were evading those registration requirements and then exempt those same offenders from SORNA.” Hinen, 487 F.Supp.2d at 753.
Because subsection (d) applies only to initial registration issues, the application of SORNA to Mr. Hinckley does not violate the Ex Post Facto Clause. SORNA’s failure to register provisions, 18 U.S.C. § 2250, impose registration requirements on any sex offender who “travels in interstate or foreign commerce” and “knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act.” Mr. Hinckley’s indictment covers the time period spanning from SORNA’s enactment in July 2006 up to the date he finally registered as a sex offender in Oklahoma as required by state and federal law on January 24, 2007. During this period, Mr. Hinckley continued to travel in interstate commerce daily between Oklahoma and Arkansas for work purposes. Therefore, Mr. Hinckley violated SORNA’s registration requirements as outlined in 42 U.S.C. § 16913(a) and (e) by failing to keep his registration current in Oklahoma after a change of residence or employment, and the Ex Post Facto Clause does not bar punishment.
2. Smith v. Doe
Mr. Hinckley further challenges SORNA’s overall applicability, arguing that the statute violates the Ex Post Facto Clause because it increases punishment retroactively. In making this argument, Mr. Hinckley unsuccessfully attempts to *937 distinguish the retroactive registration scheme at issue in Smith v. Doe, 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164, which the Supreme Court held did not violate the Ex Post Facto Clause. Because we agree with the May court, which held that “a defendant, like [Mr. Hinckley], is not even subject to the Attorney General’s regulation under § 16913(d),” we now analyze the statute’s retroactive registration requirements under Smith and agree that they do not constitute an ex post facto violation. May, 535 F.3d at 919.
To determine whether the retroactive application of a statute violates the Ex Post Facto Clause, a court must decide whether the statute is civil or criminal in nature. See id. (citing Kansas v. Hendricks, 521 U.S. 346, 361, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997)). The analysis requires an inquiry into the legislative intent, including the statute’s manner of codification and its enforcement procedures, as well as the statute’s effect. See Smith, 538 U.S. at 93-106, 123 S.Ct. 1140. The Supreme Court has held that a legislative label of “civil” is insufficient to render a statute civil in nature, and the Court has stated that it will reject the “civil” label upon a showing of the “ ‘clearest proof that ‘the statutory scheme [is] so punitive either in purpose or effect as to negate [the State’s] intention’ to deem it ‘civil.’ ” Hendricks, 521 U.S. at 361, 117 S.Ct. 2072 (quoting U.S. v. Ward, 448 U.S. 242, 248-49, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980)) (alteration in original).
Distinguishing Smith, Mr. Hinckley characterizes SORNA as a punitive criminal statute that violates the Ex Post Facto Clause. Unlike SORNA, he argues, the Smith scheme was primarily civil in nature, did not require Internet dissemination of offenders’ information, did not establish a community notification program, did not require in-person reporting, and did not include felony criminal penalties. However, SORNA’s declaration of purpose shapes the statute as one involving public safety concerns, making clear that the law is designed “to protect the public from sex offenders and offenders against children,” and comes as a “response to the vicious attacks by violent predators.” 42 U.S.C. § 16901; see May, 535 F.3d at 920; Hinen, 487 F.Supp.2d at 755-56 (discussing the legislative intent behind SORNA); Gill, 520 F.Supp.2d at 1348 (same). Therefore, the statute bears a legislative label of “civil.”
To make our determination definitive, we must further explore whether such a “civil” statute is “‘so punitive either in purpose or effect as to negate [Congress’s] intention’ to deem it ‘civil.’ ” Hendricks, 521 U.S. at 361, 117 S.Ct. 2072 (quoting Ward, 448 U.S. at 248-49, 100 S.Ct. 2636); see also May, 535 F.3d at 919-20. SOR-NA clearly uses criminal penalties under 18 U.S.C. § 2250 to further its public safety ends, but “[i]nvoking the criminal process in aid of a statutory regime does not render the statutory scheme itself punitive.” Smith, 538 U.S. at 96, 123 S.Ct. 1140. In addition, SORNA’s codification of its failure to register provisions in the criminal code does not negate the fact that Congress codified the statute’s general registration provisions under the heading of “public health and welfare.” See id. at 94,123 S.Ct. 1140 (“The location and labels of a statutory provision do not by themselves transform a civil remedy into a criminal one.”). Furthermore, SORNA, just as the Smith scheme, merely provides for the “dissemination of accurate information about a criminal record, most of which is already public.” Id. at 98, 123 S.Ct. 1140. While the public display of this information could result in shame for Mr. Hinckley, this is not “an integral part of the objective of the regulatory scheme.” *938 Id. at 99, 123 S.Ct. 1140. SORNA aims to “inform the public for its own safety, not to humiliate the offender. Widespread public access is necessary for the efficacy of the scheme, and the attendant humiliation is but a collateral consequence of a valid regulation.” Id. The statute’s primary effect supports Congress’s intention that it operate as a civil regulatory scheme designed to protect the general public welfare.
Ultimately, SORNA, a civil retroactive registration scheme, relies on criminal penalties to further its civil intent. It includes such penalties for the failure to register following interstate travel, thereby creating an entirely new offense imposed only upon violation of SORNA’s registration requirements. Contrary to Mr. Hinckley’s arguments, SORNA does not increase punishment for acts committed prior to SORNA’s effective date. Therefore, the prosecution of Mr. Hinckley under SORNA does not violate the Ex Post Facto Clause.
C. Due Process
Mr. Hinckley next raises due process claims, arguing that the courts imposed SORNA’s penalties without proper notice. First, he contends that he could not have “knowingly” failed to register under SOR-NA because the government failed to inform him of his federal duty to register and of the greater penalty attached to SORNA violations. Second, he argues that it was impossible to register in Oklahoma during the relevant time period because the state had not yet passed legislation implementing SORNA. As in May, Mr. Hinckley’s claim, “when boiled down to its essence, amounts to an ‘ignorance of the law argument.’ ” May, 535 F.3d at 921. Accordingly, we find no due process violation.
In arguing that he had no notice of his obligation to register, Mr. Hinckley relies on United States v. Smith, 528 F.Supp.2d 615 (S.D.W.Va.2007). In Smith, the district court held that, because the Attorney General did not promulgate the Interim Rule until February 2007, the government failed to provide the defendant adequate notice of his obligations. Id. at 620. However, the majority of courts have concluded that notice of a defendant’s obligations under state law is sufficient to satisfy the Due Process Clause’s requirements. See May, 535 F.3d at 921; see also United States v. Gould, 526 F.Supp.2d 538, at 545 n. 8 (D.Md.2007) (collecting cases). We agree. Moreover, Mr. Hinckley’s reliance on the Proposed Guidelines is misplaced. The Guidelines simply discuss examples of situations where states would need to provide additional information on SORNA’s requirements to offenders. See Proposed Guidelines, 72 Fed.Reg. 30, 210, 30, 228 (May 30, 2007) (discussing SORNA’s retro-activity); see also Gould, 526 F.Supp.2d at 545. In light of Mr. Hinckley’s conviction for failure to register in 2004 and his subsequent acknowledgment of his duty to register in Oklahoma, we find that Mr. Hinckley had adequate notice of his obligation to register as a sex offender.
Mr. Hinckley also contends that, while he may have had notice of his duty to register, he did not have notice of the greater penalties SORNA carried. He relies on United States v. Barnes, No. 07 Cr. 187, 2007 WL 2119895 at *3 (S.D.N.Y. July 23, 2007), which held that notice of a state law having lesser penalties differs from having actual notice of a much harsher federal law. However, because Mr. Hinck-ley’s arrest for this offense occurred well after SORNA’s enactment in July 2006, we presume that he was aware of the law. See Cheek v. United States, 498 U.S. 192, 199, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991)
*939 (“The general rule that ignorance of the law ... is no defense to criminal prosecution is deeply rooted in the American legal system.”); see also Hinen, 487 F.Supp.2d at 754 (holding that sex offenders are on “constructive notice” that their registration obligations may change periodically). Any claim that his ignorance of the penalties for his post-SORNA failure to register provides him with an affirmative defense is without merit.
Finally, Mr. Hinckley argues that Oklahoma had not yet statutorily implemented SORNA, thereby making registration in Oklahoma impossible. In support, he relies on Lambert v. California, 355 U.S. 225, 227, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957), which held that a registration scheme violates due process if “applied to a person who has no actual knowledge of his duty to register, and where no showing is made of the probability of such knowledge.” We find Lambert inapplicable because Mr. Hinckley, just like the defendant in May, did have knowledge of his duty to register under similar state and federal provisions. In addition, Mr. Hinckley claims that SORNA’s Proposed Guidelines require states to pass implementing legislation, and that Oklahoma’s failure to do so renders him “unable” to register in that state. On the contrary, the Guidelines state that, while SORNA does set “minimum standards for jurisdictions’ registration and notification programs,” it does not require statutory implementation. 72 Fed. Reg. at 30,213-14. The Guidelines continue on to state that the agency so delegated will assess the “totality of a jurisdiction’s rules” to determine whether a state is in compliance with SORNA, and that a failure to properly implement SORNA results in “a 10% reduction of Federal justice assistance funding,” not in an excuse for an offender who has failed to register. Id. at 30,212-13. Oklahoma clearly had a registration scheme in effect prior to Mr. Hinckley’s arrest, Mr. Hinckley knew of his obligation to register, and he failed to comply. He therefore not only had notice of his obligations but also could have registered in Oklahoma, which would have made him compliant with both state and federal law.
D. Nondelegation Doctrine
Mr. Hinckley further argues that Congress violated the non-delegation doctrine by granting the Attorney General the power to determine SORNA’s retroactivity under 42 U.S.C. § 16913(d). Because Mr. Hinckley is not an offender “unable to comply with [the initial registration requirements of] subsection (b),” we need not reach this argument. Subsection (d) does not apply to offenders who are required to and have already initially registered, and Mr. Hinckley therefore lacks standing to bring this claim. See May, 535 F.3d at 921 (citing United States v. Hays, 515 U.S. 737, 742-43, 115 S.Ct. 2431, 132 L.Ed.2d 635 (1995) (discussing standing requirements)).
E. Commerce Clause
Finally, Mr. Hinckley argues that SORNA violates the Commerce Clause. Specifically, he claims that the application of SORNA to his conduct is flawed, since his daily trips to Arkansas were not the type of conduct encompassed by “interstate travel,” and that the failure to register as a sex offender has no substantial effect on interstate commerce. The Supreme Court has identified three areas that Congress may regulate under the Commerce Clause: (1) “the use of the channels of interstate commerce”; (2) “the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities”; and (3) “those activities that substantially affect *940 interstate commerce.” U.S. v. Lopez, 514 U.S. 549, 558, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995); see also U.S. v. Morrison, 529 U.S. 598, 608-09, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000).
Mr. Hinckley relies on Lopez and Morrison to support his claims. However, the statutes in those cases are easily distinguished from SORNA because they failed to include an interstate travel requirement and related only to purely intrastate activity, which falls under Lopez’s third prong. The violation at issue here comprises two elements: post-SORNA failure to register coupled with interstate travel. Not only was Mr. Hinckley a “person ... in interstate commerce,” but he also used the channels of interstate commerce on a daily basis. Clearly, his travel across state lines to and from Oklahoma falls under the first or second of the Lopez prongs. Whether such an activity has a substantial effect on interstate commerce is irrelevant, since the first and second prongs of Lopez confirm Congress’s authority to regulate this type of activity. See May, 535 F.3d at 921-22 (rejecting defendant’s Commerce Clause arguments).
Essentially, “the Commerce Clause allows ‘Congress to keep the channels of interstate commerce free from immoral and injurious uses.’ ” United States v. Patton, 451 F.3d 615, 621 (10th Cir.2006) (quoting Heart of Atlanta Motel, Inc. v. United States, 379 U.S. 241, 256, 85 S.Ct. 348, 13 L.Ed.2d 258 (1964)). In enacting SORNA, Congress’s aim was to create a uniform nationwide registration system to protect the public. By requiring that a sex offender travel in interstate commerce before finding a registration violation, SORNA remains well within the constitutional boundaries of the Commerce Clause. Because Mr. Hinckley failed to keep his registration current where he lived and failed to notify authorities of his change in employment status during the dates alleged, while also satisfying SORNA’s jurisdictional requirement, we find that he has violated SORNA under 42 U.S. § 16913(a) and (c).
AFFIRMED.

. Admittedly, the question presents a close call. The dissent argues that subsection (d) unambiguously authorizes the Attorney General to make SORNA retroactively applicable to past offenders in its first clause, and in its second clause gives the Attorney General the power to prescribe rules for past offenders and those offenders unable to comply with subsection (b)’s initial registration requirements. As discussed, we disagree, finding that subsection (d) presents a statutory ambiguity, and can also reasonably be read to authorize the Attorney General merely to promulgate rules regarding initial registration requirements for those offenders unable to comply with subsection (b)’s requirements. Our interpretation of the statute is “not guided by a single sentence or member of a sentence, but [by] the provisions of the whole law, and ... its object and policy.” Dole v. United Steelworkers of Am., 494 U.S. 26, 35, 110 S.Ct. 929, 108 L.Ed.2d 23 (1990) (quoting Massachusetts v. Morash, 490 U.S. 107, 115, 109 S.Ct. 1668, 104 L.Ed.2d 98 (1989)); see also Aulston v. United States, 915 F.2d 584, 589 (10th Cir.1990) (“In interpreting the relevant language, however, we look to the provisions of the whole law, and to its object and policy.”); United States v. Balint, 201 F.3d 928, 932-33 (7th Cir.2000).

. In a related case, this court has held that SORNA does not apply to defendants who completed their interstate travel prior to SORNA's effective date of July 27, 2006. See United States v. Husted, No. 08-6010, 2008 WL 4792339 (10th Cir. Nov.5, 2008). Because Mr. Hinckley's interstate travel occurred and continued after that date, unlike Mr. Husted’s travel, he therefore satisfies both prongs of SORNA: the failure to register upon traveling in interstate commerce.

.“If SORNA were deemed inapplicable to sex offenders convicted prior to its enactment, then the resulting system for registration of sex offenders would be far from 'comprehensive,' and would not be effective in protecting the public from sex offenders because most sex offenders who are being released into the community or are now at large would be outside of its scope for years to come. For example, it would not apply to a sex offender convicted of a rape or child molestation offense in 2005, who is sentenced to imprisonment and released in 2020.” 72 Fed.Reg. at 8896.

.If the ambiguity persists after consideration of the above factors, the Supreme Court requires the application of the rule of lenity. See Callanan v. U.S., 364 U.S. 587, 596, 81 S.Ct. 321, 5 L.Ed.2d 312 (1961) (directing the application of the rule of lenity “at the end of the process of construing what Congress has expressed, not at the beginning as an over *933 riding consideration of being lenient to wrongdoers”). The rule of lenity directs the court to interpret a federal criminal statute in such fashion as to avoid an increase in the penalty prescribed for the offense. See Bifulco v. United States, 447 U.S. 381, 387-401, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980) (determining that the rule of lenity need not apply after consideration of the language and structure, legislative history, and motivating policy of a statute).

. The Interim Rule states: "The current rule-making serves the narrower, immediately necessary purpose of foreclosing any dispute as to whether SORNA is applicable where the conviction for the predicate sex offense occurred prior to the enactment of SORNA.” 72 Fed.Reg. at 8896. The Rule goes on to state, "This rule forecloses such claims by making it indisputably clear that SORNA applies to all sex offenders ... regardless of when they were convicted.” Id.

. Because sex offenders who have never before been required to register are not in the sex offender registry, tracking them down and notifying them of SORNA’s requirements would require jurisdictions to go through old records and determine whether their convictions constitute sex offenses for the purposes of SORNA, and track them down and notify them of the new law. It makes sense that Congress would decide it best to allow the Attorney General to determine if and to what extent jurisdictions would be required to register sex offenders falling into this category. See generally Final Guidelines, 73 Fed.Reg. 38,030-01 (July 2, 2008).

. For the purposes of the case before us, we do not need to decide whether an individual who had never before been required to register would be required to register under subsection (d) before the Attorney General issued the Interim Rule.

. The Supreme Court has held that a conviction may be upheld as long as the indictment sets out the offense charged. "A part of the indictment unnecessary to and independent of the allegations of the offense proved may normally be treated as 'a useless averment’ that ‘may be ignored.’ ” United States v. Miller, 471 U.S. 130, 136, 105 S.Ct. 1811, 85 L.Ed.2d 99 (1985) (quoting Ford v. United States, 273 U.S. 593, 602, 47 S.Ct. 531, 71 L.Ed. 793 (1927)).