SHEDD, Circuit Judge,
dissenting:
The majority holds that the Sex Offender Registration and Notification Act (“SORNA”)[1] did not apply to the defendant-appellants (the “Defendants”) until the Attorney General issued interim rules seven months after SORNA’s effective date. In my view, the majority reaches this conclusion by reading one of SORNA’s subsections — 42 U.S.C. § 16913(d) — out of context. When read in light of § 16913 as a whole and SORNA’s other provisions— as controlling case law requires — I conclude that § 16913 is unambiguous and required the Defendants to comply with SORNA on its effective date. Consequently, I would affirm the judgments of the district courts.
I.
As the majority notes, all of the Defendants were convicted of sex offenses under state law between 1993 and 2001, and they completed any prison sentences associated with their convictions before July 27, 2006. As a result of their convictions, the Defendants were required to register as sex offenders under various state statutes, and at least initially they all complied with those state registration requirements.
On July 27, 2006, SORNA became law. SORNA’s stated purpose is “to protect the *230 public from sex offenders and offenders against children” by “establish[ing] a comprehensive national system for the registration of those offenders.” 42 U.S.C. § 16901. Among other things, SORNA requires every state to maintain a sex offender registry conforming to SORNA’s requirements, id. § 16912(a); requires certain persons to register as sex offenders in each state where they reside, where they are employed, and where they are a student, id. § 16913(a); and requires those persons to keep their registrations current, id. § 16913(c). SORNA also authorizes the Attorney General to specify “the applicability of’ SORNA to persons convicted of sex offenses before July 27, 2006. Id. § 16913(d). Moreover, SORNA makes it unlawful for a person who is required to register under SORNA and travels in interstate commerce to knowingly fail to register or update a registration as required by SORNA. 18 U.S.C. § 2250.
On February 28, 2007, seven months after SORNA’s enactment, the Department of Justice (the “DOJ”) published interim rules specifying the applicability of SORNA to persons convicted of sex offenses before July 27, 2006. See 28 C.F.R. §§ 72.1 to 72.3 (the “Interim Rules”); see also Applicability of the Sex Offender Registration and Notification Act, 72 Fed.Reg. 8,894 (Feb. 28, 2007). The Interim Rules make it clear that these sex offenders were covered by SORNA on its effective date. The Interim Rules state that “[t]he requirements of [SORNA] ... apply to all sex offenders, including sex offenders convicted of the offense for which registration is required prior to the enactment of that Act.” 28 C.F.R. § 72.3. Moreover, the DOJ’s statement accompanying its publication of the Interim Rules states: “Considered facially, SORNA requires all sex offenders who were convicted of sex offenses in its registration categories to register in relevant jurisdictions, with no exception for sex offenders whose convictions predate the enactment of SORNA.” 72 Fed. Reg. at 8,896 (emphasis added).
After the DOJ published the Interim Rules, the Defendants were indicted for violating one of SORNA’s provisions, see 18 U.S.C. § 2250, by being persons required to register under SORNA, traveling in interstate commerce, and failing to register or update their registrations as required by SORNA. All of the conduct charged in the indictments occurred prior to February 28, 2007, the effective date of the Interim Rules. After unsuccessfully moving to dismiss their indictments, all of the Defendants were convicted for violating 18 U.S.C. § 2250.
Though the Defendants raise a number of challenges on appeal, the gravamen of their argument is that we should vacate their convictions and dismiss their indictments because all of their relevant conduct occurred before SORNA applied to them. At least two other circuit courts recently rejected similar arguments. See United States v. Hinckley, 550 F.3d 926 (10th Cir.2008) (holding that SORNA applied to the defendant on SORNA’s effective date); see also United States v. May, 535 F.3d 912 (8th Cir.2008) (same), but see United States v. Madera, 528 F.3d 852 (11th Cir.2008) (holding that SORNA did not apply to the defendant until the Attorney General issued the Interim Rules).[2]
II.
A.
We review questions of statutory interpretation de novo. Blaustein & Reich, *231 Inc. v. Buckles, 365 F.3d 281, 286 (4th Cir.2004). As with any question of statutory interpretation, the “first step ... is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.” Robinson v. Shell Oil Co., 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997). The Supreme Court has stated that “[t]he plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.” Id. at 341, 117 S.Ct. 843. A statute is ambiguous if its language, when read in context, is susceptible to more than one reasonable interpretation. Newport News Shipbuilding & Dry Dock Co. v. Brown, 376 F.3d 245, 248 (4th Cir.2004). If the statutory language is unambiguous, however, the inquiry “is at an end, for [ijf the language is plain and the statutory scheme is coherent and consistent, we need not inquire further. Our sole function is to enforce [the statute] according to its terms.” William v. Gonzales, 499 F.3d 329, 333 (4th Cir.2007) (alterations in original) (citations omitted).
B.
With these principles in mind, I turn first to the language of § 16913 — a provision that defines SORNA’s applicability— and in particular subsection (d), the subsection on which the majority focuses. Subsection (d) states in its entirety:
The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section.
42 U.S.C. § 16913(d).
Reading this language, the majority concludes that subsection (d) contains two clauses. The first clause, the majority states, authorizes the Attorney General to specify the applicability of SORNA’s requirements to all sex offenders who were convicted before SORNA’s enactment. The second clause authorizes the Attorney General to prescribe initial registration requirements for certain sex offenders. Ante at 226-27. Accepting the majority’s view that subsection (d) contains two clauses and that its first clause resolves the question presented in these appeals, I disagree with the majority’s interpretation of that clause.
The majority concludes that SORNA did not apply to the Defendants until the Attorney General issued the Interim Rules. In the majority’s view, Congress delegated the “Attorney General exclusive authority to determine the applicability of SORNA to pre-SORNA offenders” because subsection (d) states that the Attorney General “shall have the authority” to specify the applicability of SORNA. Ante at 226-27. Since Congress delegated the Attorney General authority to specify SORNA’s applicability, the majority concludes that SORNA could not apply to any sex offender whose conviction predated SORNA until the Attorney General said otherwise.
In my view, the majority misreads subsection (d) in part because it does not give appropriate consideration to all of § 16913’s subsections and SORNA’s other provisions. As the Supreme Court has stated, “[i]t is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.” Davis v. Michigan Dep’t of Treasury, 489 U.S. 803, 809, 109 *232 S.Ct. 1500, 103 L.Ed.2d 891 (1989). Indeed, “a reviewing court should not confine itself to examining a particular statutory provision in isolation. The meaning — or ambiguity — of certain words or phrases may only become evident when placed in context.” FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 132, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000). In light of § 16913 as a whole and SORNA’s other provisions, it becomes clear that subsection (d) does not exempt the Defendants from SORNA’s reach pending a determination by the Attorney General.
Section 16913(a) states in relevant part that “[a] sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student.” 42 U.S.C. § 16913(a). SORNA defines a “sex offender” as “an individual who was convicted of a sex offense,” id. § 16911, and there is no dispute that the Defendants are “sex offenders” within the meaning of § 16913(a) because they were all convicted of sex offenses under state law between 1993 and 2001. Therefore, under the plain terms of § 16913(a), SORNA requires the Defendants to register and keep their registrations current.
Moreover, § 16913(a)’s command is absolute. It contains no exceptions for persons who were convicted of sex offenses before SORNA’s enactment. See, e.g., United States v. Zuniga, No. 4:07CR3156, 2008 WL 2184118, at *10 (D.Neb. May 23, 2008) (stating that § 16913(a) unambiguously requires every sex offender to register and that its plain language does not make a temporal distinction as to the date of a sex offender’s conviction; instead, the statute imposes its requirements on sex offenders without qualification); accord Hinckley, 550 F.3d at 933 (stating that Zuniga’s, interpretation “is the only sensible result in light of the Act’s purpose, history, and surrounding language”). Similarly, § 16913(b) states that all sex offenders “shall initially register,” and it contains no exception for sex offenders whose convictions predate SORNA. The same is also true of § 16913(c). It directs sex offenders to keep their registrations current, and makes no distinction between sex offenders who were convicted of sex offenses before or after SORNA’s enactment. See Hinckley, 550 F.3d at 944 (Gorsuch, J., concurring) (“[Section] 16913(c) ... directs all sex offenders to keep their registration current.... ”).
Moreover, SORNA “establishes a comprehensive national system for the registration” of sex offenders, 42 U.S.C. § 16901 (emphasis added), and numerous other statutory provisions confirm SOR-NA’s “comprehensive” nature. For example, SORNA requires every state to maintain a statewide sex offender registry conforming to SORNA’s national requirements. Id. § 16912. In other sections, SORNA requires the Attorney General to maintain a “national database” “for each sex offender,” id. § 16919(a) (emphasis added), and a “National Sex Offender Public Website,” which “shall include relevant information for each sex offender,” id. § 16920 (emphasis added).
In addition, SORNA defines the term “sex offender” as an individual who “was convicted of a sex offense.” Id. § 16911 (emphasis added). By using the verb “was,” SORNA expressly sweeps persons who were convicted of sex offenses prior to SORNA’s enactment within the statute’s scope and thus indicates that the statute is not purely prospective in nature, applying only to persons whose sex offenses postdate SORNA’s enactment.
Therefore, subsection (d)’s context makes it clear that the provision should be read in light of at least three primary *233 guideposts: first, SORNA establishes a “comprehensive ” system for the registration of sex offenders; second, subsections (a)-(c) require sex offenders to register, without exception; and third, SORNA defines sex offenders as persons who were convicted of sex offenses prior to SORNA’s enactment. Reading subsection (d) against this backdrop, I conclude that subsection (d) is unambiguous and does not operate to negate SORNA’s coverage of all sex offenders — coverage which is established in subsections (a)-(c).[3] Understood in context, subsection (d) merely authorizes the Attorney General to exempt persons with sex offenses that predate July 27, 2006, from SORNA’s reach.[4] In other words, the Attorney General could declare that SORNA is inapplicable to certain persons.
Further, there is simply nothing in the word “applicability” itself which suggests any determination by the Attorney General must be prospective only. The language certainly allows the Attorney General to determine that no pre-SORNA sex offenders are exempt and that SORNA continues to apply to them. Indeed, that is what the Attorney General did by adopting the Interim Rules. Therefore, unless the Attorney General were to exercise his authority to exempt a sex offender from SORNA’s reach, SORNA applies to all sex offenders, including the Defendants, regardless of the date of their convictions.
Consistent with Supreme Court precedent, my interpretation of SORNA is “not guided by a single sentence or member of a sentence, but [by] looking] to the provisions of the whole law.” Dole v. United Steelworkers of Am., 494 U.S. 26, 35, 110 S.Ct. 929, 108 L.Ed.2d 23 (1990) (quotation marks omitted). Indeed, to read subsection (d) as relieving every pre-SORNA sex offender of any obligation to comply with SORNA, as the majority does, “requires us to believe that Congress sought simultaneously to achieve two manifestly irreconcilable ends: (1) to create a ‘comprehensive national system’ for the registration of sex offenders, 42 U.S.C. § 16901, and (2) to exempt all existing sex offenders from that comprehensive system.” Hinckley, 550 F.3d at 945 (Gorsuch, J., concurring). But as the DOJ has stated, “[i]f SORNA were deemed inapplicable to sex offenders convicted prior to its enactment, then the resulting system for registration of sex offenders would be far from ‘comprehensive,’ and would not be effective in protecting the public from sex offenders.” 72 Fed.Reg. at 8,896.
III.
In addition to raising the statutory interpretation argument discussed above, *234 the Defendants also challenge their convictions on a number of constitutional grounds. Because the majority accepted the Defendants’ statutory argument, it had no occasion to reach their constitutional claims. Reviewing their constitutional claims de novo, see United States v. Buculei, 262 F.3d 322, 327 (4th Cir.2001) (“We review de novo a challenge to the constitutionality of a federal statute.”), I find that the Defendants are not entitled to any relief.
The Defendants argue that their convictions violate the ex post facto and due process clauses of the United States Constitution. In essence, the Defendants contend that their convictions violate these clauses because all of their charged conduct occurred before February 28, 2007, and in their view they had no obligation to comply with SORNA before that date. As discussed in Part II of my dissent, however, I conclude that the Defendants were required to comply with SORNA on July 27, 2006, and the Defendants were charged with traveling in interstate commerce and failing to register or update their registrations as required by SORNA after July 27, 2006. Therefore, their ex post facto and due process claims are without merit. See Hinckley, 550 F.3d at 935-39 (upholding SORNA against ex post facto and due process clause challenges); May, 535 F.3d at 919-21 (same).
The Defendants next contend that SOR-NA violates the commerce clause of the United States Constitution because it fails to establish a constitutionally sufficient relationship to the regulation of interstate commerce. I disagree. Under Supreme Court precedent, Congress may regulate three broad categories of activities pursuant to its commerce clause power: (1) “the use of the channels of interstate commerce”; (2) “the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities”; and (3) “those activities having a substantial relation to interstate commerce.” United States v. Lopez, 514 U.S. 549, 558-59, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). In these cases, the Defendants were prosecuted for violating 18 U.S.C. § 2250 — a statute that contains an express jurisdictional requirement limiting its application to persons who move in interstate commerce in violation of SORNA. At a minimum, this type of conduct falls within the second category identified in Lopez and thus may be regulated pursuant to Congress’s commerce clause power. See Hinckley, 550 F.3d at 939-40 (rejecting a commerce clause challenge to SORNA); May, 535 F.3d at 921-22 (same).
The Defendants also contend that subsection (d) violates the nondelegation doctrine because it authorizes the Attorney General to determine whether SORNA shall apply retroactively to sex offenders convicted before SORNA’s enactment. For the reasons set forth in Part II of my dissent, I disagree with the Defendants that SORNA delegated the Attorney General authority to determine SORNA’s retroactive application. As I stated above, SORNA’s plain and unambiguous terms state that it applies to all persons convicted of sex offenses, including persons whose convictions predate SORNA’s enactment. Thus, the Defendants’ nondelegation argument lacks merit.
IV.
In summary, I would affirm the judgments of the district courts because the Defendants can be held liable under SOR-NA for their actions during the time period between SORNA’s enactment and the DOJ’s publication of the Interim Rules.

. Congress passed SORNA as title one of the Adam Walsh Child Protection and Safety Act of 2006, Pub.L. No. 109-248, 120 Stat. 587 (2006).

. Both Hinckley and May reach the same result as I do, but those cases employ a slightly different analysis. They conclude that § 16913(d) is ambiguous, but I conclude that it is unambiguous.

. Because I conclude that subsection (d) is unambiguous, the rule of lenity does not apply. United States v. Helem, 186 F.3d 449, 455 (4th Cir.1999) ("The rule of lenity, which requires the court to strictly construe criminal statutes, does not apply in this case because the statute is not ambiguous.”).

. To the extent one considers the DOJ's statement accompanying its publication of the Interim Rules, the statement supports my interpretation of subsection (d) and shows that the Interim Rules were intended to foreclose the exact arguments pressed by the Defendants in these appeals. See 72 Fed.Reg. at 8,896 (“[S]ex offenders with predicate convictions predating SORNA who do not wish to be subject to the SORNA registration requirements, or who wish to avoid being held to account for having violated those requirements, have not been barred from attempting to devise arguments that SORNA is inapplicable to them, e.g., because a rule confirming SORNA's applicability has not been issued. This rule forecloses such claims by making it indisputably clear that SORNA applies to all sex offenders (as the Act defines that term) regardless of when they were convicted.” (emphasis added)).