[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 5, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-17244

_____

D. C. Docket No. 08-00224-CR-WS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WILLIAM ERIC BROWN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

(November 5, 2009)

Before DUBINA, Chief Judge, BIRCH and SILER,* Circuit Judges.

BIRCH, Circuit Judge:

---

* Honorable Eugene E. Siler, Jr., United States Circuit Judge for the Sixth Circuit, sitting by designation.

William Eric Brown appeals his conviction under 18 U.S.C. § 2250(a) for failing to register in accordance with the Sex Offender Registration and Notification Act ("SORNA"). Brown contends, for the first time on appeal, that the district court committed plain error during his Rule 11 colloquy when it erroneously stated his maximum term of supervised release. Additionally, Brown challenges the validity and applicability of SORNA on various grounds. This case presents issues of first impression in our circuit involving application of SORNA. Upon careful consideration of the record and oral arguments, we AFFIRM.

## I. BACKGROUND

Brown was convicted by North Carolina in November 1996 of indecent liberties with a minor. He signed a North Carolina Sex Offender Acknowledgment Form which required him to register after his release from prison. When Brown registered in June 1998 in North Carolina, he was told to notify North Carolina within 30 days of changing his address. In June 2007, Brown moved from North Carolina to Mobile, Alabama, where he resided until 12 June 2008 without registering his address in Alabama.

Brown was subsequently indicted for violating 18 U.S.C. § 2250(a), by knowingly failing to register and update his registration from June 2007 through 12 June 2008 in accordance with SORNA. Brown filed a pre-trial motion to dismiss

the indictment challenging the validity and applicability of SORNA based on grounds of due process, implementation, notice, and the Commerce Clause. The court denied the motion.

In August 2008, Brown pled guilty as charged, conditioned upon his right to appeal the motion to dismiss the indictment. Both the written plea agreement and the district court during the guilty plea hearing mistakenly stated that Brown faced a maximum three-year term of supervised release. However, Brown's presentence investigation report ("PSI"), issued approximately six weeks before sentencing, correctly identified the possible supervised release term as being five years to life, pursuant to 18 U.S.C. § 3583(k). Brown did not file any written objections to the report.

At the sentencing hearing in December 2008, Brown's attorney indicated that he had received a copy of the PSI and discussed it with Brown. Brown himself acknowledged that he understood what was contained in the PSI. After Brown's attorney affirmed that he had no objections to the PSI, the district court adopted the PSI as published. The court ultimately sentenced Brown to 21 months of imprisonment followed by a life term of supervised release. Brown did not object to the life term of supervised release. This appeal followed.

## II. DISCUSSION

A. <u>Whether a Rule 11 Violation Invalidated Brown's Guilty Plea</u>

Brown first contends that his guilty plea was unknowing and involuntary because the district court committed plain error when it informed him that he faced a maximum three-year term of supervised release. The government concedes error but contends that no prejudice has been shown.

Because Brown did not object to the Rule 11 colloquy in district court, we review for plain error. <u>See</u> <u>United States v. Bejarano</u>, 249 F.3d 1304, 1306 (11th Cir. 2001) (per curiam). This requires Brown to show a clear error that prejudiced him by affecting his substantial rights. <u>See</u> <u>id.</u> In the context of a Rule 11 error, prejudice to the defendant means "a reasonable probability that, but for the error, he would not have entered the plea." <u>United States v. Dominguez Benitez</u>, 542 U.S. 74, 83, 124 S. Ct. 2333, 2340 (2004). We may consider the whole record when assessing whether a Rule 11 error affected Brown's substantial rights. <u>See</u> <u>United States v. Vonn</u>, 535 U.S. 55, 59, 122 S. Ct. 1043, 1046 (2002). Even if Brown carries his burden of establishing clear, prejudicial error, we may not remedy that error unless it "seriously affects the fairness, integrity or public reputation of judicial proceedings." <u>Puckett v. United States</u>, 556 U.S. ___, ___, 129 S. Ct. 1423, 1429 (2009) (quotation marks, citation, and bracket omitted).

A guilty plea is knowingly and voluntarily made if the defendant enters his

plea without coercion and understands the nature of the charges and the consequences of his plea. See United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005) (per curiam). The consequences of a guilty plea include "any maximum possible penalty, including imprisonment, fine, and term of supervised release[.]" Fed. R. Crim. P. 11(b)(1)(H).

Here, the plea agreement and the district court incorrectly advised Brown that the maximum term of supervised release was three years, instead of life. See 18 U.S.C. § 3583(k) (2009) (mandatory supervised release term for violating 18 U.S.C. § 2250 is five years to life). Thus, as the government concedes, the error in this case was plain. See United States v. Carey, 884 F.2d 547, 548 (11th Cir. 1989) (per curiam) ("[I]t is clear that the district court erred in not informing appellant at the plea hearing that appellant, if sentenced to prison, would be subject to a term of supervised release.").

Nevertheless, Brown has not carried his burden of showing prejudice. In Bejarano, both the written plea agreement and the district court during the plea colloquy failed to inform Bejarano that his sentence would include a mandatory minimum term of five years of supervised release. See Bejarano, 249 F.3d at 1305-06. Instead, the plea agreement and the court only stated that his term of imprisonment would be "followed by a term of supervised release." Id. The PSI,

5

however, correctly stated that Bejarano faced a statutory minimum term of five years of supervised release. See id. at 1306. Bejarano did not object to the PSI at sentencing. See id. Consequently, we concluded that Bejarano was not entitled to withdraw his guilty plea because "Bejarano's conduct indicates that his substantial rights were not affected by the district court's failure to inform him at his plea colloquy of the specific term of supervised release required by statute[.]" Id. at 1307.

Although the instant case differs from Bejarano in that Brown was informed of an incorrect term of supervised release (as opposed to an unspecified term), the error was similarly corrected by the PSI. As in Bejarano, Brown did not object to the PSI's correct statement concerning his statutory range of supervised release. Brown stated at the sentencing hearing that he discussed the PSI with his attorney and understood its contents. After the district court imposed Brown's sentence, including the lifetime term of supervised release, Brown and his attorney again forfeited an opportunity to object to the term of supervised release. Accordingly, like Bejarano's actions, Brown's own conduct indicates that his substantial rights were not harmed by the district court's error during the plea hearing. See also Carey, 884 F.2d at 549 (finding no prejudice where the defendant failed to object to the correct information about his supervised release provided by the PSI and the

6

sentencing judge).

Brown attempts to distinguish his case from <u>Bejarano</u> based on the following footnote:

> We also note that every circuit that has addressed this issue has held that a district court's failure to inform a defendant that he faces a specific term of supervised release, or to inform the defendant of the effect of supervised release on his sentence, is *harmless error in a situation like this one, where the defendant's actual sentence, including the term of imprisonment and period of supervised release, is well below the sentence that the defendant was informed by the district court that he faced*.

<u>Bejarano</u>, 249 F.3d at 1306 n.1 (emphasis added). According to Brown, a district court's erroneous information about supervised release is harmless error where the actual sentence imposed is less than the erroneously stated term. Because Brown's lifetime term of supervised release exceeded the maximum 3-year term that he was mistakenly advised of at the plea hearing, Brown argues that the district court's error was not harmless under Rule 11(h).

Brown's argument is meritless because his case is not subject to harmless error analysis. We may review for harmless error under Rule 11(h) where a defendant has moved in the district court to withdraw his guilty plea based on Rule 11 error. <u>See</u> <u>United States v. Monroe</u>, 353 F.3d 1346, 1349-50 n.2 (11th Cir. 2003). In this case, Brown did not move to withdraw his plea in the district court. Our review is therefore limited to plain error. <u>See</u> <u>id.</u>; <u>see</u> <u>also</u> <u>Moriarty</u>, 429 F.3d

7

at 1019 ("[W]hen a defendant fails to object to a Rule 11 violation, we review only for plain error.")

Furthermore, Brown has failed to show a reasonable probability that he would not have pled guilty but for the Rule 11 error. See Dominguez Benitez, 542 U.S. at 83, 124 S. Ct. at 2340. Despite his lengthy criminal record, stretching back to 1991, the court gave Brown "the benefit of [his] bargain" by sentencing him to the minimum term of his guidelines range. Doc. 42-2 at 10, 14. There is no evidence to support Brown's current allegation (raised for the first time in his reply brief) that he would not have pled guilty if he had known that the maximum supervised release term was life instead of three years. Accordingly, we conclude that the district court did not plainly err when it misstated Brown's maximum term of supervised release during his plea colloquy.

B. Validity and Applicability of SORNA

Next, Brown raises several challenges to SORNA. He asserts that SORNA did not apply to him because Alabama had not yet implemented SORNA. Brown further argues that his prosecution violated his due process right of fundamental fairness because it was impossible for him to comply with SORNA's registration requirements and because he received no notice of his duty to register under SORNA. Finally, Brown asserts that SORNA violates the Commerce and

8

Necessary and Proper Clauses. As these issues concern constitutional law and statutory interpretation, our review is de novo. See United States v. Dumont, 555 F.3d 1288, 1289 (11th Cir. 2009) (per curiam), cert. denied, (U.S. Oct. 5, 2009) (No. 08-10087).

1. Applicability of SORNA to Brown

Enacted in July 2006, SORNA created a comprehensive national system for registering sex offenders in order to track their interstate movement. See United States v. Ambert, 561 F.3d 1202, 1205 (11th Cir. 2009). SORNA provides in pertinent part as follows:

> A sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student. For initial registration purposes only, a sex offender shall also register in the jurisdiction in which convicted if such jurisdiction is different from the jurisdiction of residence.

42 U.S.C. § 16913(a) (2009). In order to keep one's registration "current," a sex offender must update his registry information in at least one jurisdiction involved in subsection (a) within three business days after changing residence, employment, name, or student status. Id. § 16913(c). If a convicted sex offender travels in interstate or foreign commerce and knowingly fails to register as required by SORNA, he has violated the Act and may be punished by fines and/or imprisonment for up to ten years. 18 U.S.C. § 2250(a) (2009). It is an affirmative

9

defense if "(1) uncontrollable circumstances prevented the individual from complying; (2) the individual did not contribute to the creation of such circumstances in reckless disregard of the requirement to comply; and (3) the individual complied as soon as such circumstances ceased to exist." Id. § 2250(b).

SORNA authorized the Attorney General to determine SORNA's applicability for "sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction." 42 U.S.C. § 16913(d). On 28 February 2007, the Attorney General exercised that authority by enacting 28 C.F.R. § 72.3, which expressly applied SORNA registration requirements "'to *all* sex offenders, including sex offenders convicted of the offense for which registration is required prior to the enactment of that ACT.'" Ambert, 561 F.3d at 1206 (quoting 28 C.F.R. § 72.3) (emphasis added). The Attorney General's interim regulations made it clear that SORNA retroactively applies to sex offenders, like Brown, who were convicted before SORNA's enactment. See United States v. Madera, 528 F.3d 852, 857 (11th Cir. 2008) (per curiam).

Nevertheless, Brown argues that SORNA does not apply to him because Alabama has not implemented it. He points to a provision in the final regulations ("National Guidelines") which authorizes jurisdictions to phase in SORNA registration for sex offenders with pre-SORNA or pre-SORNA-implementation

10

convictions.  The portion quoted by Brown states:

> In other words, sex offenders in these existing sex offender populations who cannot be registered within the normal SORNA time frame (i.e., before release from imprisonment or within three business days of sentencing for the registration offense) must be registered by the jurisdiction when it implements the SORNA requirements in its system within a year for sex offenders who satisfy the tier I criteria, within six months for sex offenders who satisfy the tier II criteria, and within three months for sex offenders who satisfy the tier III criteria.

73 Fed. Reg. 38030, 38063-64 (2008).  Based on this provision, Brown reasons that sex offenders with pre-SORNA convictions, like himself, have a duty to register only after the jurisdiction implements SORNA.

Brown's argument fails to appreciate the distinction between a jurisdiction's duty to implement SORNA and a sex offender's duty to register.  See United States v. Gould, 568 F.3d 459, 464 (4th Cir. 2009), petition for cert. filed, (U.S. Sept. 25, 2009) (No. 09-6742) ("[T]he structure of SORNA's requirements indicates a separateness of the sex offenders' individual duty to register and the State's duty to enhance its registries and standards as mandated by the Act.").  SORNA granted jurisdictions until 27 July 2009 (a deadline which the Attorney General may extend) to implement its requirements.  42 U.S.C. § 16924 (2009).  If a state fails to substantially and timely implement SORNA, the state's federal funding tied to the statute is reduced by ten percent.  Id. § 16925(a) (2009).  The Attorney General's interim regulations specified, however, that "[i]n contrast to SORNA's

11

provision of a three-year grace period for jurisdictions to implement its requirements, SORNA's direct federal law registration requirements for sex offenders are not subject to any deferral of effectiveness." 72 Fed. Reg. 8894, 8895 (2007). The final regulations in the National Guidelines likewise provide that SORNA applies to sex offenders regardless of whether the relevant jurisdiction has incorporated SORNA's requirements. See 73 Fed. Reg. at 38063. In fact, the provision quoted by Brown is lifted from a section of the National Guidelines entitled "Retroactive Classes," which begins with the following sentence: "As discussed in Part II.C of these Guidelines, SORNA applies to all sex offenders, including those convicted of their registration offenses prior to the enactment of SORNA *or prior to particular jurisdictions' incorporation of the SORNA requirements into their programs*." Id. (emphasis added).

Although we have not addressed Brown's particular argument, several of our sister circuits have rejected similar claims. See Gould, 568 F.3d at 463-66 (SORNA applies to defendant even though Maryland had not yet implemented it); United States v. Dixon, 551 F.3d 578, 582 (7th Cir. 2008), cert. granted, Carr v. U.S., (U.S. Sept. 30, 2009) (No. 08-1301) (defendant required by SORNA to register with Indiana despite Indiana's failure "to establish any procedures or protocols for the collection, maintenance, and dissemination of the detailed

12

information required by the Act"); United States v. Hinckley, 550 F.3d 926, 939 (10th Cir. 2008), cert. denied, ___ U.S. ___, 129 S. Ct. 2383 (2009) (defendant required to register under SORNA even though Oklahoma had not statutorily implemented SORNA). As these cases point out, SORNA was not enacted in a vacuum. To the contrary, every state and the District of Columbia had a sex offender registration law prior to 2006. See Gould, 568 F.3d at 464. An individual may therefore comply with SORNA's registration requirements by registering through the state's sex offender registry, even if that jurisdiction has not implemented SORNA's administrative procedures. See id.; Dixon, 551 F.3d at 582; Hinckley, 550 F.3d at 939. Accordingly, a jurisdiction's failure to implement SORNA results in a loss of federal funds, "not in an excuse for an offender who has failed to register." Hinckley, 550 F.3d at 939.

We agree with our sister circuits that a sex offender is not exempt from SORNA's registration requirements merely because the jurisdiction in which he is required to register has not yet implemented SORNA. Here, it is undisputed that Alabama maintained a sex offender registry during the relevant time period which required sex offenders to register and provide updated information upon changing residences. See Ala. Code §§ 13A-11-200, 15-20-23 (2009). Brown thus could have registered as a sex offender through Alabama's sex offender program.

13

Accordingly, we conclude that SORNA applied to Brown.

   2. Due Process Violations

   Brown also raises two due process violations. Related to his above argument, Brown first submits that it was impossible for him to comply with SORNA because Alabama had not implemented it. Although Brown acknowledges that Alabama has a sex offender registry, he asserts that he was unable to register through it. The basis for his claim comes from a handwritten note added to the factual resume of the written plea agreement, which states as follows:

> In February, 2008, the defendant contends he was advised by employees of the Alabama Dept. of Public Safety that he was required to register as a sex offender. The defendant attempted to register with the Mobile County Sheriff's Department but was told to leave the State of Alabama.

Doc. 27, Factual Resume at 2. Brown reasons that because he was physically incapable of registering, it violated his due process right to fundamental fairness to prosecute him for not doing so.

   We disagree. Brown's assertion that the Mobile County Sheriff's Department refused to register him is essentially a claim that uncontrollable circumstances prevented him from complying with SORNA. This is an affirmative defense which Brown could have raised under 18 U.S.C. § 2250(b), but he instead

14

chose to plead guilty. "[A] guilty plea establishes factual guilt and therefore all constitutional violations which are inconsistent with that factual guilt are waived by a guilty plea." United States v. Bonilla, 579 F.3d 1233, 1240 (11th Cir. 2009). A constitutional violation is not waived if the charge, when judged on its face, is one which the state may not constitutionally prosecute regardless of a defendant's factual guilt.[1] See id. Here, the charge against Brown did not, on its face, violate due process. As discussed, SORNA applied to Brown, and he could have registered through Alabama's sex offender registry. To the extent Brown attempts to challenge his factual guilt by asserting that he was prevented from registering, his guilty plea waived any such challenge. See id. Accordingly, we find no due process violation based on Alabama's failure to implement SORNA.

Brown's second due process claim stems from the government's lack of notice concerning his duty to register under SORNA. Brown maintains that he had no duty to register under SORNA because the government failed to notify him of his duty to register. In support, Brown cites the Supreme Court's decision in Lambert v. California, 355 U.S. 225, 229-30, 78 S. Ct. 240, 243-44 (1957), which held that a registration scheme violates due process "[w]here a person did not know of the duty to register and where there was no proof of the probability of

_____

[1] For example, certain double jeopardy challenges are not waived by a guilty plea. See id. at 1240-41.

15

such knowledge[.]"

Pursuant to 42 U.S.C. § 16917(a), an appropriate official must notify a sex offender of his duty to register before the defendant's release from custody, or immediately after sentencing if the defendant is not in custody. See 42 U.S.C. § 16917(a) (2009). However, Brown acknowledges that this subsection does not encompass sex offenders, like him, who have already served their sentences prior to SORNA's enactment. For these sex offenders, it is up to the Attorney General to prescribe rules regarding notice. See id. § 16917(b). The Attorney General issued those regulations in July 2008, after Brown's indictment in June 2008. See 73 Fed. Reg. at 38063. These regulations encourage jurisdictions to inform pre-SORNA sex offenders, such as Brown, "as quickly as possible" about SORNA's requirements. Id. The National Guidelines recognize that "it may not be feasible for a jurisdiction to do so immediately" and therefore provide time frames within which a jurisdiction must register a sex offender "*when* it implements the SORNA requirements in its system[.]" Id. at 38063-64 (emphasis added). Accordingly, as Alabama had not implemented SORNA's requirements into its registry program during the time period charged in the indictment, Alabama did not have a duty to notify Brown of his duty to register.

Furthermore, Lambert is easily distinguishable from the facts of this case.

16

Lambert involved a city ordinance that required convicted felons to register with the police if he or she stayed in Los Angeles for at least five days. See Lambert, 355 U.S. at 226, 78 S. Ct. at 241-42. The Supreme Court held that the ordinance violates due process if a defendant had no actual knowledge of his duty to register and there were no "circumstances which might move one to inquire as to the necessity of registration[.]" Id. at 229, 78 S. Ct. at 243. Brown, on the other hand, had actual knowledge that he had a duty to register in Alabama. In the factual resume to the plea agreement, Brown asserted that the Alabama Department of Public Safety advised him in February 2008 that he was required to register as a sex offender. Brown also admitted in his plea agreement that he *knowingly* and intentionally failed to register in Alabama as required by SORNA. Although the plea agreement does not specify whether his duty to register fell under state law or SORNA, we join our sister circuits in concluding that "notice of a duty to register under state law is sufficient to satisfy the Due Process Clause." United States v. Whaley, 577 F.3d 254, 262 (5th Cir. 2009); accord Gould, 568 F.3d at 468-69; Dixon, 551 F.3d at 584; Hinckley, 550 F.3d at 938; United States v. May, 535 F.3d 912, 921 (8th Cir. 2008), cert. denied, ___ U.S. ___, 129 S. Ct. 2431 (2009).

In addition to actual notice, there were sufficient circumstances to prompt Brown to have inquired upon his duty to register. See Lambert, 355 U.S. at 229,

78 S. Ct. at 243. As found by the district court, these circumstances included: (1) Brown's North Carolina conviction as a sex offender; (2) Brown's notice in 1998 of his duty to register under North Carolina law and inform authorities of a change in address; (3) Brown's compliance with North Carolina registration requirements, thereby demonstrating his understanding of his duty to register; (4) the Jacob Wetterling Act's enactment in 1994, setting national standards for sex offender registration and notification; and (5) the pre-existence of sex offender registration laws in every state which have garnered national media attention. See Doc. 26 at 9. In light of Brown's actual notice of a duty to register in Alabama and the circumstances prompting a need to inquire into such a duty, we find no due process violation.

     3. Violation of the Commerce Clause and the Necessary and Proper Clause

In his final argument, Brown contends that Congress exceeded its power under the Commerce Clause and the Necessary and Proper Clause in enacting SORNA's registration requirements and making it a federal crime to fail to register. Brown acknowledges that we have decided these questions adversely to him in Ambert, 561 F.3d at 1210-12, but he raises the issues to preserve them for future certiorari or collateral review. "We are bound by [Ambert] unless overruled

18

by the Supreme Court or this Court sitting *en banc*." <u>United States v. Myers</u>, ___ F.3d ___, No. 09-10228, 2009 WL 3270005, at *1 (11th Cir. Oct. 13, 2009). Accordingly, <u>Ambert</u> controls.

### III. CONCLUSION

In summary, we find that the district court did not commit plain error during the plea colloquy when it mistakenly informed Brown of his maximum supervised release term. We also conclude that SORNA applied to Brown and that Brown's prosecution did not violate his due process rights. Finally, we reject Brown's challenge to the validity of SORNA based on our holding in <u>Ambert</u>. We therefore AFFIRM Brown's conviction under 18 U.S.C. § 2250(a) for violating SORNA's registration requirements.

**AFFIRMED.**