[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-13913

_____

D.C. Docket No. 8:10-cr-00303-SDM-MAP-4

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

PEDRO LORENZO FUENMAYOR-AREVALO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(September 18, 2012)

Before HULL, MARCUS and HILL, Circuit Judges.

PER CURIAM:

Pedro Lorenzo Fuenmayor-Arevalo appeals his convictions and sentences

for conspiracy to possess with intent to distribute, and actual possession with

intent to distribute, five kilograms or more of cocaine while aboard a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. §§ 70503(a)(1) and 70506(a) and (b).  After review, we affirm.

## I. BACKGROUND

### A. Arrest and Indictment

On June 15, 2010, a U.S. Coast Guard vessel spotted a Colombian fishing vessel in the international waters of the Caribbean Sea.  A Coast Guard team boarded the fishing vessel, and a search revealed 70 kilograms of cocaine in a hidden compartment in the fish hold of the fishing vessel.  Fuenmayor-Arevalo and the four other crew members of the fishing vessel were arrested and transported to the United States.  Fuenmayor-Arevalo's son-in-law and grandnephew were two of these four crew members.

A grand jury indicted Fuenmayor-Arevalo and the four other crew members for conspiracy to possess with intent to distribute, and actual possession with intent to distribute, five kilograms or more of cocaine while aboard a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. §§ 70503(a)(1) and 70506(a) and (b).

### B. Plea Hearing

Fuenmayor-Arevalo indicated that he wished to plead guilty to both counts

of the indictment and consented to a joint plea hearing with two of his codefendants before a magistrate judge. At the September 20, 2010 hearing, the magistrate judge cautioned Fuenmayor-Arevalo that he must plead guilty knowingly, voluntarily, and "with a full understanding of the consequences."

Through an interpreter, Fuenmayor-Arevalo testified that he was 60 years old, had not attended school, was unable to read or write Spanish, and had never been treated for any type of mental illness or addiction. He had discussed his plea with his attorney, who had offered satisfactory advice and representation. Further, Fuenmayor-Arevalo understood the charges against him, including the elements of the offenses, that he was subject to a minimum sentence of ten years, and that he was giving up his right to a jury trial. Fuenmayor-Arevalo confirmed that no one had made any promises or threats in connection with his guilty plea.

Fuenmayor-Arevalo also admitted to serving as a machinist aboard a boat that was hauling more than five kilograms of cocaine. He further admitted that he knowingly and willfully entered into a drug-smuggling venture involving five or more kilograms of cocaine. He then pled guilty to both counts in the indictment without a written plea agreement. Fuenmayor-Arevalo's counsel then stated that he was satisfied that the plea was entered knowingly, voluntarily, and with a full understanding of the consequences. The magistrate judge concluded that

3

Fuenmayor-Arevalo was "fully competent and capable of entering an informed plea" and that the plea was supported by an independent basis in fact.

After the September 20, 2010 hearing, the magistrate judge issued a written report recommending that Fuenmayor-Arevalo's guilty plea be accepted as "knowledgeable, voluntary, and supported by a factual basis." Fuenmayor-Arevalo did not object to the magistrate judge's recommendation.

On October 4, 2010, the district court accepted Fuenmayor-Arevalo's plea and adjudged him guilty on both counts of the indictment.

## C. Motion to Withdraw Guilty Plea

On November 18, 2010, Fuenmayor-Arevalo moved to withdraw his guilty plea. His motion alleged that he was incompetent at the time of the plea. Fuenmayor-Arevalo's motion alleged that he only recently discovered his diminished mental capacity, which rendered his plea constitutionally unreliable and constituted a previously unknown defense. Fuenmayor-Arevalo's motion stated that he was an uneducated and illiterate Colombian fisherman. His motion acknowledged that he appeared to have understood the plea proceedings but alleged that the extent of his mental disability "was obscured" because he did not speak English. In November 2010, Fuenmayor-Arevalo had undergone a psychological examination by neuropsychologist, Dr. Yolanda Leon. According

4

to Fuenmayor-Arevalo, Dr. Leon found that he was borderline mildly mentally retarded and possibly suffered from dementia. Although he attached Dr. Leon's curriculum vitae to the motion, Fuenmayor-Arevalo did not submit Dr. Leon's actual report or any other affidavit or evidence in support of the motion.

In opposition, the government argued that Fuenmayor-Arevalo had not provided adequate evidence that he was incompetent at the time he entered his plea. To the contrary, the record and evidence established that he was competent before, during, and after entering his plea. In support, the government attached investigative reports summarizing Fuenmayor-Arevalo's post-arrest statements, which evidenced his rationality and understanding.

More specifically, according to a post-arrest report prepared after he was discovered aboard the fishing boat loaded with 70 kilograms of cocaine, Fuenmayor-Arevalo told federal agents, through a Spanish interpreter, that he trusted his captain and believed that the boat was simply a fishing vessel. In a proffer to the Federal Bureau of Investigation two months later, however, Fuenmayor-Arevalo claimed that the captain told everyone what to say and that the captain would take responsibility so that everyone else would be set free. In the FBI proffer, Fuenmayor-Arevalo admitted that he was given 1.5 million Colombian Pesos before departing on the trip and that he was told that the money

5

was for "picking up drugs."  Fuenmayor-Arevalo told the FBI that "he had no doubt what he was doing and that he needed the money to get back on his feet."

The government also attached reports from FBI interviews, taken in November 2010, of three of Fuenmayor-Arevalo's codefendants, including his son-in-law and grandnephew.  Fuenmayor-Arevalo's son-in-law described him as intelligent, mentally competent, and a quick learner.  Fuenmayor-Arevalo's son-in-law stated that Fuenmayor-Arevalo knew the trip was to transport drugs and specifically asked how much money he would receive and where the drugs were to be delivered.  Similarly, a second codefendant stated that Fuenmayor-Arevalo seemed mentally competent, knew right from wrong, and was capable of carrying on a normal conversation.  Fuenmayor-Arevalo's grandnephew stated that he was teaching Fuenmayor-Arevalo how to read and write and that Fuenmayor-Arevalo was "an excellent student."

**D. Motion for Competency Hearing**

In December 2010, before the district court ruled on the motion to withdraw his guilty plea, Fuenmayor-Arevalo filed a written motion for a court determination of his competency and again requested to withdraw his guilty plea. He claimed that he was legally incompetent because he was unable to assist properly in his defense.

6

In support of his motion for a court declaration of incompetency, Fuenmayor-Arevalo submitted in camera copies of two psychological examination reports. The first report, which resulted from Dr. Leon's evaluation in November 2010, concluded that Fuenmayor-Arevalo was mildly mentally retarded, had an IQ score of 52, and possibly suffered from dementia affecting his memory and problem-solving ability. Dr. Leon opined that Fuenmayor-Arevalo's "limited intellectual ability and apparent neurocognitive impairment" prevented him from appreciating the government's evidence against him and from "providing his attorney with any meaningful communications that would allow him to assist in his defense."

The second report, prepared by Dr. Hector Cases following a neurological examination in December 2010, stated that Fuenmayor-Arevalo possibly suffered from dementia, but that a brain MRI, brain PET scan, and bloodwork were necessary for a definitive diagnosis. However, Dr. Cases still opined that Fuenmayor-Arevalo was "not competent to understand the nature and potential consequences of the proceedings against him."

The government responded that Fuenmayor-Arevalo's guilty plea should be enforced because the psychological evaluation was inconsistent with his conduct throughout the proceedings, including his demonstrated ability to logically and

7

reasonably explain the facts of the case.

After discussing the issue with the parties at a December 7, 2010 hearing, the magistrate judge determined that Fuenmayor-Arevalo was entitled to an evidentiary hearing and placed him under custodial observation at a federal detention center for 30 days.

### E. Motions for Diagnostic Tests and Dr. Luis's Examination

In January 2011, Fuenmayor-Arevalo filed a motion requesting no more than $6,000 for the three tests—a brain MRI, a brain PET scan, and various bloodwork—recommended by Dr. Cases to diagnose dementia. Fuenmayor-Arevalo argued that these tests would provide conclusive evidence of brain damage or incapacity and were necessary for an adequate defense.

On February 10, 2011, the magistrate judge denied without prejudice the motion for the diagnostic tests. Fuenmayor-Arevalo did not object or otherwise challenge the denial of his motion for diagnostic tests.

On February 11, 2011, the magistrate judge issued an order committing Fuenmayor-Arevalo to the custody of the Attorney General for 30 days for a competency evaluation under 18 U.S.C. § 4241. During Fuenmayor-Arevalo's 30 days at the federal detention center, Dr. Jorge Luis, a forensic psychologist, evaluated Fuenmayor-Arevalo and found him competent. In April 2011, Dr. Luis

8

also sent a written report to the court and to Fuenmayor-Arevalo.[1]

After receiving Dr. Luis's report, Fuenmayor-Arevalo renewed his motion requesting the diagnostic tests suggested by Dr. Cases. On May 11, 2011, the magistrate judge denied the renewed motion because the diagnostic tests were not necessary to determine whether Fuenmayor-Arevalo was competent when he pled guilty. Fuenmayor-Arevalo did not object or otherwise challenge the magistrate judge's May 11, 2011 order denying this renewed motion for diagnostic tests.

## F. Evidentiary Hearing and Competency Findings

On June 23, 2011, the magistrate judge conducted an evidentiary hearing regarding Fuenmayor-Arevalo's competency and the validity of his earlier guilty plea. At the start of the hearing, Fuenmayor-Arevalo orally renewed his motion for the diagnostic tests a second time, and the magistrate judge again denied that motion.

Dr. Leon, a neuropsychologist, testified that she examined Fuenmayor-Arevalo in November 2010 and June 2011 to assess his competency. Dr. Leon believed that Fuenmayor-Arevalo had been mildly to moderately mentally retarded since childhood. Dr. Leon assessed Fuenmayor-Arevalo's

---

[1]Although the district court and the parties apparently received Dr. Luis's report, the report was not docketed in the district court and is not in the record on appeal. Nevertheless, Dr. Luis testified about his findings at the competency hearing discussed later.

verbal ability IQ score as 52. He showed signs of possible dementia and generally displayed the reasoning ability of a six-year-old child. He also appeared "to possibly be susceptible to suggestion," and he would, in an attempt to be agreeable, respond affirmatively to basic questions such as, "Is your day going well?" Accordingly, Dr. Leon would question Fuenmayor-Arevalo's assent to any proposition unless he articulated it in his own words.

Dr. Leon also reported that, in one assessment, Fuenmayor-Arevalo was presented with brief legal scenarios and his verbal responses were compared to those of confirmed incompetent test-takers. Dr. Leon opined that Fuenmayor-Arevalo's low-percentile score showed that he could not adequately understand, reason, or appreciate the scenarios. Similarly, with respect to the current proceedings, Dr. Leon opined that Fuenmayor-Arevalo was unable to articulate the charges against him, whether now or at the time of his plea, and was only partially responsive to Dr. Leon's questions. Regarding Fuenmayor-Arevalo's ability to discuss the proceedings with counsel, Dr. Leon opined that Fuenmayor-Arevalo "would have some ability to discuss whatever he did capture in terms of attention and retention" but that he could not "engage in a meaningful discussion because of his significantly impaired verbal expression abilities."

10

During cross-examination, Dr. Leon testified that she had spent approximately three and one half hours interviewing and assessing Fuenmayor-Arevalo, which she believed was more than enough time to make a valid assessment. In diagnosing Fuenmayor-Arevalo as mentally retarded, Dr. Leon relied on his marginal lifestyle, low achievement, apparent inability to learn, and his presentation.

Pat Doherty, the defense attorney for one of Fuenmayor-Arevalo's codefendants, testified that he met with Fuenmayor-Arevalo and found him to be incapable of coherently explaining his role in the charged offense or identifying the basic function of the judge or the prosecutor. On cross-examination, Doherty acknowledged that Fuenmayor-Arevalo told him that there was cocaine on the boat and that Fuenmayor-Arevalo knew it was cocaine.

Dr. Luis, the forensic psychologist from the federal detention center in Miami, testified that he had evaluated Fuenmayor-Arevalo during the 30-day, court-ordered competency evaluation. During that time, the prison staff reported that Fuenmayor-Arevalo had no problem functioning or maintaining his cell. Dr. Luis also administered a competency assessment designed to gauge legal knowledge and ability. During this competency assessment, Fuenmayor-Arevalo (1) correctly identified the charges against him and the basic roles of the judge,

11

prosecutor, and defense attorney, (2) admitted that he was guilty of transporting 70 kilograms of cocaine, and (3) stated that he faced a potential sentence of nine or ten years. Additionally, Fuenmayor-Arevalo was able to provide information regarding his personal history and background.

Dr. Luis found no evidence that Fuenmayor-Arevalo "is impaired by any mental disease or defect that would impair his ability to understand the legal proceedings." Dr. Luis also found no evidence of any mental disease or defect that would have impaired his ability to consult with his attorney at the time he entered his plea. Additionally, Dr. Luis noted that Fuenmayor-Arevalo exhibited adaptive functioning in a structured setting because he was able to maintain his room and care for himself while he was at the detention center and he was "able to inform medical services [at the detention center] that he had been diagnosed with hypertension and cholesterol, essentially high cholesterol while he was at the [county] jail."

During cross-examination, Dr. Luis opined that Fuenmayor-Arevalo's full scale IQ fell in the "very poor" range at 66. However, Dr. Luis testified that Fuenmayor-Arevalo apparently functioned well within his own cultural environment, as evidenced by his stable family status and long-term occupation. Although Fuenmayor-Arevalo performed poorly on some aspects of the

12

competency assessment, Dr. Luis noted that Fuenmayor-Arevalo's total lack of education made it more difficult to administer the tests and interpret the results. Further, although Fuenmayor-Arevalo suffered from memory deficits in specific areas, Dr. Luis testified that these problems were not significant enough to suggest dementia.

## G. Magistrate Judge's Report on Motions

In a June 27, 2011 report, the magistrate judge recommended that the district court find Fuenmayor-Arevalo competent now and at the time of his plea. The magistrate judge expressly credited Dr. Luis's testimony, which was based on Fuenmayor-Arevalo's rational responses to questions and his 30-day conduct at the prison, over Dr. Leon's testimony based on her limited, post-plea evaluation of Fuenmayor-Arevalo. The magistrate judge recommended that the district court deny Fuenmayor-Arevalo's motion to withdraw his guilty plea, which was entered knowingly, voluntarily, and with close assistance of counsel.

On July 26, 2011, Fuenmayor-Arevalo objected to the magistrate judge's report, re-arguing both his earlier motion to withdraw his guilty plea and the weight of the evidence regarding his competency.  Specifically, Fuenmayor-Arevalo argued that his plea was not knowing and voluntary because he lacked the ability to understand his rights and available defenses and was

13

susceptible to suggestion.  Additionally, he argued that the magistrate judge erred in denying his three motions requesting funds for further diagnostic tests.

After considering the record, the district court adopted the magistrate judge's report, found that Fuenmayor-Arevalo was competent at the time he entered his guilty plea, and denied his motion to withdraw his guilty plea.

## H. PSI and Sentencing

In the presentence investigation report ("PSI"), Fuenmayor-Arevalo was held responsible for the 70 kilograms of cocaine found on the boat.  He was assigned a total offense level of 31 and a criminal history category of I.[2]  These factors established an advisory guidelines range of 108 to 135 months, subject to a 120-month statutory mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(A),[3] which narrowed the advisory guidelines range to 120 to 135 months' imprisonment.  See U.S.S.G. § 5G1.1(c) (providing that the bottom of the

---

[2]The PSI assigned a base offense level of 36 under U.S.S.G. § 2D1.1(c) because Fuenmayor-Arevalo was responsible for 70 kilograms of cocaine.  The PSI applied (1) a two-level reduction under § 3E1.1(a) for acceptance of responsibility; (2) a one-level reduction under § 3E1.1(b) for timely pleading guilty and assisting authorities with the prosecution of his offense; and (3) a two-level reduction under § 2D1.1(b)(16) because Fuenmayor-Arevalo met the criteria for safety-valve relief under § 5C1.2(a).  Thus, his total offense level was 31.  (Although the parties contested the applicability of the statutory safety-valve provision, neither party objected to the PSI's application of the two-level reduction under the guidelines safety-valve provision.  Because neither party objected to any of the guidelines calculations in the PSI or on appeal, we do not address them).

[3]Under 21 U.S.C. § 841(b)(1)(A), a defendant convicted of a drug offense involving five kilograms or more of cocaine is subject to mandatory minimum sentence of 10 years (or 120 months) and a maximum sentence of life imprisonment.

guidelines range cannot be less than any statutorily required minimum sentence).

In a PSI addendum, Fuenmayor-Arevalo objected to the PSI's failure to recommend relief from the mandatory minimum sentence pursuant to the safety-valve provision of 18 U.S.C. § 3553(f).  Fuenmayor-Arevalo also filed a separate motion requesting the application of the safety-valve provision.  However, Fuenmayor-Arevalo did not object to either the factual allegations or guidelines calculations in the PSI.

At sentencing, the district court adopted the factual allegations and guidelines calculations set forth in the PSI.  The parties then argued their positions regarding the applicability of the statutory safety-valve provision in § 3553(f).  The district court explained that, if the safety-valve applied, the court would likely sentence Fuenmayor-Arevalo to no more than 60 months, probably 36 to 48 months.  Nevertheless, although noting that the issue was close, the district court concluded that Fuenmayor-Arevalo did not qualify for safety-valve relief.  Accordingly, the district court calculated a total offense level of 31, a criminal history category of I, and an advisory guidelines range of 120 to 135 months' imprisonment.  The district court imposed the statutory mandatory minimum sentence of 120 months.

## II. DISCUSSION

15

## A. Competency to Plead Guilty

Fuenmayor-Arevalo first argues that the district court clearly erred in determining that he was competent at the time he entered his guilty plea.

We review for clear error the district court's competency determination. United States v. Izquierdo, 448 F.3d 1269, 1276 (11th Cir. 2006). This determination is clearly erroneous only if we are "left with a definite and firm conviction that a mistake has been committed." United States v. Rodriguez-Lopez, 363 F.3d 1134, 1137 (11th Cir. 2004) (quotation marks omitted). When faced with "diametrically opposite expert testimony, a district court does not clearly err simply by crediting one opinion over another where other record evidence exists to support the conclusion." Battle v. United States, 419 F.3d 1292, 1299 (11th Cir. 2005) (quotation marks omitted). Further, an expert opinion as to competency is not binding on the district court if there is reason to doubt it. Izquierdo, 448 F.3d at 1279.

"The due process clause prohibits the trial or guilty plea conviction of a person who is mentally incompetent." Sheley v. Singletary, 955 F.2d 1434, 1437 (11th Cir. 1992). The mere presence of mental illness at the time of pleading does not necessarily render a defendant incompetent. Rather, the standard for determining competency to plead is, in part, whether the defendant has sufficient

16

present ability to consult with his lawyer with a reasonable degree of understanding.  See 18 U.S.C. § 4241(a); Dusky v. United States, 362 U.S. 402, 402, 80 S.Ct. 788, 788–89 (1960).  Absent evidence of an inability to assist counsel, the defendant's "low intelligence, mental deficiency, bizarre, volatile, or irrational behavior, or the use of anti-psychotic drugs is not sufficient to show incompetence."  Pardo v. Sec'y, Fla. Dep't of Corr., 587 F.3d 1093, 1101 (11th Cir. 2009).  A defendant must demonstrate his incompetency by a preponderance of the evidence.  United States v. Bradley, 644 F.3d 1213, 1268 (11th Cir. 2011).

Here, we cannot say the district court clearly erred in determining that Fuenmayor-Arevalo was competent at the time he entered his guilty plea.  At the evidentiary hearing, the magistrate judge encountered irreconcilable testimony from two experts as to Fuenmayor-Arevalo's competence. Given this irreconcilable testimony, the magistrate judge was free to credit one expert over the other.  The magistrate judge expressly credited Dr. Luis's findings, and nothing suggests that his testimony was in any way unreliable.  Rather, Dr. Luis had the benefit of 30 days' worth of the detention-center staff's observations of Fuenmayor-Arevalo, and Dr. Luis based his findings on those observations and on Fuenmayor-Arevalo's rational responses and understanding of the roles of the judge, prosecutor, and defense attorney in his criminal case.  Dr. Luis also noted

17

that Fuenmayor-Arevalo had exhibited adaptive functioning in the detention-center environment and that he successfully informed medical personnel at the county jail about his recently diagnosed hypertension and high cholesterol.

Furthermore, other evidence in the record supports a finding of competency. For example, three of Fuenmayor-Arevalo's codefendants, including his grandnephew and son-in-law, stated that Fuenmayor-Arevalo seemed intelligent and was capable of learning. Further, in a proffer to the FBI shortly before the plea colloquy, Fuenmayor-Arevalo explained his earlier denial of guilt and detailed his role in the drug-smuggling venture. He also admitted to accepting 1.5 million Colombian Pesos to transport the drugs because he needed the money to get back on his feet. At the evidentiary hearing, one of the codefendant's attorneys testified that Fuenmayor-Arevalo told him that Fuenmayor-Arevalo knew that the fishing boat was transporting cocaine. Finally, during the plea colloquy, the magistrate judge observed that Fuenmayor-Arevalo appeared to be "fully competent and capable of entering an informed plea." Given all this evidence, the district court did not clearly err in finding Fuenmayor-Arevalo competent to plead guilty.

## B. Denial of Diagnostic Tests

Fuenmayor-Arevalo next argues that the district court erred in denying his motions for diagnostic tests for dementia. Fuenmayor-Arevalo asserts that these

18

tests were needed "to secure hard medical evidence to establish incompetency" and that the denial of these tests deprived him of his constitutional right to due process. See Ake v. Oklahoma, 470 U.S. 68, 83, 105 S. Ct. 1087, 1096 (1985) (holding that an indigent capital defendant who made a preliminary showing that his sanity was likely to be a significant factor at trial had a due-process right of access to a competent psychiatrist to conduct an appropriate examination and to "assist in evaluation, preparation, and presentation of the defense").

We review for abuse of discretion the district court's denial of a motion for expert services, including psychiatric services in cases where competency is at issue. United States v. Rinchack, 820 F.2d 1557, 1563 (11th Cir. 1987). A district court should authorize such services if the services are necessary for an adequate defense and the defendant lacks the resources to obtain them. Id.; see also 18 U.S.C. § 3006A(e)(1).

A district court is not required "to grant an eleventh hour request for Section 3006A(e) services," particularly if the delay in making the request is unjustified and the services would require a continuance of the hearing. Rinchack, 820 F.2d at 1564. Further, if the defendant already has sufficient expert assistance to present his competency claim, the district court may deny as unnecessary additional psychiatric services. Id. at 1565.

19

Here, Fuenmayor-Arevalo timely objected only to the denial of his third, oral motion for diagnostic tests.[4]  This third motion was made during the competency hearing itself and, if granted, would have required a continuance of the hearing.  The tests thus not only would have caused delay, but also were unnecessary because Fuenmayor-Arevalo had already been examined by two experts regarding his cognitive ability and his ability to understand legal proceedings.  One of these experts, Dr. Leon, testified at the evidentiary hearing and gave her opinion as to Fuenmayor-Arevalo's competency—the ultimate issue in the case.  Accordingly, the district court did not abuse its discretion in denying Fuenmayor-Arevalo's motion for further diagnostic testing.

## C. Denial of Motion to Withdraw Guilty Plea

Fuenmayor-Arevalo argues that the district court erred in denying his motion to withdraw his guilty plea.  We review for abuse of discretion the district court's denial of a motion to withdraw a guilty plea.  United States v. Buckles, 843

---

[4]Before the district court, Fuenmayor-Arevalo did not challenge either the magistrate judge's order denying his first motion for diagnostic tests, filed on January 24, 2011, or the order denying his second motion for diagnostic tests, filed on April 27, 2011. Under Federal Rule of Criminal Procedure 59(a), a defendant generally must serve and file objections to a magistrate judge's ruling on a non-dispositive matter within 14 days, or he waives any right to review. Fed. R. Crim. P. 59(a); see also United States v. Schultz, 565 F.3d 1353, 1359 (11th Cir. 2009) ("[A]ppellate courts are without jurisdiction to hear appeals directly from federal magistrates.") (internal quotation marks omitted).  By failing to object to those orders, Fuenmayor-Arevalo waived his right to review of those particular orders.

F.2d 469, 471 (11th Cir. 1988).  Pursuant to Federal Rule of Criminal Procedure 11(d)(2)(B), the district court may allow a defendant to withdraw his guilty plea if he "can show a fair and just reason for requesting the withdrawal."  Fed. R. Crim. P. 11(d)(2)(B).  In making this assessment, the district court should evaluate the "totality of the circumstances surrounding the plea."  Buckles, 843 F.2d at 471–72.  Four factors guide this analysis: (1) whether close assistance of counsel was available; (2) whether the plea was knowing and voluntary; (3) whether judicial resources will be conserved; and (4) whether the government would be unduly prejudiced.  Id. at 472.

A guilty plea is knowing and voluntary if the defendant entered the plea without coercion and with the understanding of the nature of the charges and the consequences of the plea.  United States v. Brown, 586 F.3d 1342, 1346 (11th Cir. 2009).  We apply a strong presumption that statements made under oath during a plea colloquy are truthful.  United States v. Medlock, 12 F.3d 185, 187 (11th Cir. 1994).  Consequently, the defendant bears a heavy burden to show a statement made under oath at a plea colloquy was false.  United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988).  Further, a defendant seeking to set aside a guilty plea "must at the very least show that correct information would have made a difference in his decision to plead guilty."  United States v. Schubert, 728 F.2d

21

1364, 1365 (11th Cir. 1984).

Here, the district court did not abuse its discretion in denying Fuenmayor-Arevalo's motion to withdraw his guilty plea because the record shows that Fuenmayor-Arevalo's plea was knowing, voluntary, and entered with close assistance of counsel. At the plea colloquy, Fuenmayor-Arevalo confirmed that he had discussed his plea with his counsel and was satisfied with counsel's advice and performance. Notably, although Fuenmayor-Arevalo argues that a defendant with a severe mental handicap is likely incapable of comprehending legal advice, he does not argue that he actually failed to comprehend his counsel's advice.

Regarding the "knowing and voluntary" requirement, the magistrate judge expressly cautioned Fuenmayor-Arevalo that his plea must be entered into knowingly, voluntarily, and "with a full understanding of the consequences." Before offering his guilty plea, Fuenmayor-Arevalo confirmed that he understood the charges against him, that he was subject to a minimum sentence of ten years, that he was giving up his right to a jury trial, and that no one had made any promises or threats in connection with his guilty plea.[5] Given the totality of the

---

[5]Fuenmayor-Arevalo's argument that the post-plea discovery of a defense based on diminished capacity independently constituted a fair and just reason for withdrawal also fails. Fuenmayor-Arevalo did not claim or offer any evidence below, through either testimony or affidavit, that he would not have pled guilty had he been aware of this defense.

22

circumstances, including Fuenmayor-Arevalo's testimony at the plea hearing that his plea was knowing and voluntary, we cannot conclude that the district court abused its discretion by refusing to allow Fuenmayor-Arevalo to withdraw his plea.

**D. Denial of Safety-Valve Relief**

Lastly, Fuenmayor-Arevalo argues that the district court erred in ruling that he was ineligible for safety-valve relief under 18 U.S.C. § 3553(f) because he was convicted for maritime drug law offenses under 46 U.S.C. §§ 70503 and 70506 that are not specified in the safety-valve statute.[6]  However, Fuenmayor-Arevalo's argument is foreclosed by our recent precedent in United States v. Pertuz-Pertuz, 679 F.3d 1327 (11th Cir. 2012).  In Pertuz-Pertuz—which involved an appeal by one of Fuenmayor-Arevalo's codefendants convicted of the same maritime drug law offenses as Fuenmayor-Arevalo—we held that "the plain text of the statutes shows that [maritime drug law] convictions under Title 46 of the U.S. Code . . . entitle a defendant to no safety-valve sentencing relief." Id. at 1329.

---

[6]Under 18 U.S.C. § 3553(f), the sentencing court may sentence a defendant convicted under 21 U.S.C. §§ 841, 844, 846, 960, or 963 without regard to the statutory mandatory minimum sentence if: (1) the defendant does not have more than one criminal history point, (2) the defendant did not use violence, threaten violence, or possess a dangerous weapon in connection with the offense, (3) the offense did not result in death or serious bodily injury to any person, (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, and (5) the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense.

Accordingly, we affirm Fuenmayor-Arevalo's convictions and sentences.

**AFFIRMED.**