[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-14515
Non-Argument Calendar
_____

D.C. Docket No. 1:08-cr-0032-RWS-GGB-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JULIUS HARRISON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(January 30, 2013)

Before TJOFLAT, MARCUS and KRAVITCH, Circuit Judges.

PER CURIAM:

On October 5, 2006, a man wearing a white surgical-type mask, a black jumpsuit, and a baseball cap entered a branch of the Washington Mutual Bank located in Henry County, Georgia. He threatened the tellers with a black semi-automatic pistol and what appeared to be a bomb[1] and demanded money. After obtaining $1,000, he fled the scene in a white and royal blue Ford F-150 pickup truck. After the robbery, a mask and a hat were found lying outside an automobile shop approximately one block from the bank. The police determined that the robber was appellant Julius Leroy Harrison, obtained a search warrant for his residence, and found evidence linking him to the robbery; it included white masks and a baseball cap similar to those worn by the robber.

On October 20, 2006, Atlanta police stopped Harrison in an unrelated matter, searched him and found a loaded .40 caliber pistol, the number of which had been obliterated, and a bag of marijuana. He was arrested, taken into custody by the Henry County Sheriff's office, and questioned by an FBI agent and a sheriff's investigator. He admitted the robbery, and on October 23, 2006, a Northern District of Georgia magistrate judge issued a complaint charging him with bank robbery, in violation of 18 U.S.C. §§ 2113(a) and (d), and with using and carrying a firearm during and in relation to a crime of violence, in violation of

---

[1] The bomb turned out to be a hoax device designed to look like a pipe bomb, with two flares held next to a metal pipe with black tape.

2

18 U.S.C. § 924(c).  He was in custody, but due to an administrative error he was mistakenly released.

On February 5, 2008, a Northern District of Georgia grand jury indicted Harrison on the charges listed in the October 23, 2006 complaint, and two days later he was taken into custody.  A superseding indictment issued on March 18, 2008.  It charged Harrison with the additional offense of possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1), and pursuant to 18 U.S.C. § 3559(c), provided him with notice that he qualified for enhanced punishment on the bank robbery charge and, if convicted of the charge, faced a mandatory life sentence.

On February 18, 2008, while in custody in the Fulton County Jail, Harrison attempted suicide.  Pursuant to court order, he was evaluated at the Federal Medical Center in Lexington, Kentucky, and on March 25, 2009, following a hearing, a magistrate judge found him competent to stand trial.  On August 23, 2009, after his trial had been continued, Harrison again attempted suicide, by inflicting cuts on his left arm, and was placed on suicide watch.  After he attempted suicide again, by hanging, on September 15, 2009, the District Court had him evaluated at the Federal Medical Center at Butner, North Carolina, and again continued his trial.

By December 2009, the court and counsel for the respective parties were apparently satisfied that Harrison was competent to stand trial, so his case proceeded to trial, on December 15.  In the second day of trial, Harrison, having negotiated a plea agreement with the Government, tendered  pleas of guilty to all charges.  Under the plea agreement, although the maximum sentence Harrison could receive was life imprisonment, the Government recommended a total sentence of 420 months.  During the plea colloquy that ensued, the court asked Harrison if he had any questions about the representation counsel had provided him, and he stated that he was satisfied. The court then accepted his plea.

On April 9, 2009, defense counsel informed the court that Harrison wanted to withdraw his pleas of guilty, that Harrison pled guilty because he felt that counsel "wasn't prepared to do a good job at trial."  On April 13, 2009, the District Court held a hearing on Harrison request.  Harrison testified that counsel had been derelict in failing to subpoena some alibi witnesses who would testify that he was at work at the time of the robbery. The court informed Harrison that it could not vacate his pleas without asking counsel about the conversations he had had with Harrison.  Harrison agreed to allow counsel to speak.  Counsel then testified that in November, shortly before trial, Harrison told him that, at the time of the bank robbery, he was working on "some cars for people at Texaco," a service station he frequented from time to time while not working on his regular "large machinery

4

job." But Harrison could not recall the names of the people or what cars he was working on. When the court asked Harrison if he had any additional information about witnesses he may have wanted subpoenaed, he testified that counsel "never did get in touch with people at the Texaco."

The court denied Harrison's motion to withdraw his guilty pleas and sentenced him to 300 months' imprisonment on the bank robbery charge and 420 months on the other two charges, the sentences to run concurrently. He now appeals the court's judgment, arguing that: (1) his guilty pleas were involuntary; (2) the District Court abused its discretion in denying his request to withdraw the pleas; and (3) the pleas resulted from ineffective assistance of counsel. We address these arguments in order.

## I.

Harrison contends the his pleas were involuntary, the product of his loss of all confidence in his attorney's ability to defend him. And he felt forced to plead guilty to avoid a certain life sentence. He also says that the mental health issues he was suffering played a role in his decision.

A guilty plea waives a number of constitutional rights, and must therefore be made knowingly and voluntarily to satisfy due process. *United States v. Moriarty*, 429 F.3d 1012, 1019 (11th Cir. 2005). We determine the voluntariness of a guilty plea *de novo*. *United States v. Bushert*, 997 F.2d 1343, 1352 (11th Cir. 1993). To

5

determine that a guilty plea is knowing and voluntary, the court must specifically address the three core concerns of Federal Rule of Criminal Procedure 11 by ensuring that the defendant: (1) enters his guilty plea free from coercion; (2) understands the nature of the charges; and (3) understands the consequences of his plea. *Moriarty,* 429 F.3d at 1019.  A strong presumption exists that statements made during a plea colloquy are true. *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994).

The record reflects that Harrison's pleas were voluntary.  First of all, Harrison entered the pleas free from coercion. *See Moriarty,* 429 F.3d at 1019.  He contends that his pleas were effectively coerced because, due to his belief that his attorney was not properly defending him, he did not think he would win if the case proceeded to trial.  At the plea colloquy, though, the District Court asked him if he was satisfied with his counsel's representation, and he answered in the affirmative. He has not rebutted the strong presumption that this statement was true. *See Medlock*, 12 F.3d at 187.

Furthermore, his mental illness did not prevent him from understanding the nature of the charges and the consequences of the pleas. *See Moriarty*, 429 F.3d at 1019.  First, the record shows that he understood the nature of the charges. *See id*. After Harrison tendered his guilty pleas, the Government recited the elements of the charges against him, and he stated that he understood that those were the

6

elements of the crimes to which he was pleading guilty.  See *Medlock*, 12 F.3d at 187 (holding that strong presumption exists that statements made during a plea colloquy are true).  Second, the record establishes that he understood the consequences of the pleas.  The Government explained the sentencing range for the offenses, supervised release, and restitution to which he might be subject if he pleaded guilty.  The court explained the appellate rights he was forfeiting.  He stated that he understood all of this information.  See *id*.

The findings of Dr. Judith Campbell, who evaluated his competence to stand trial, confirm the presumption from the above statements that Harrison's mental illness did not render his pleas involuntary.  Her evaluation determined that Harrison was capable of understanding both the nature and extent of the charges against him as well as the various possible outcomes of pleading guilty.  Therefore, his guilty pleas were voluntary.

## II.

Harrison argues that the District Court abused its discretion in denying his request to withdraw his guilty pleas.  He asserts that he did not have close assistance of counsel at the time of the pleas because he did not believe his counsel was adequately defending him, and that his mental illness supports overturning the pleas.

7

We review the denial of a request to withdraw a guilty plea for abuse of discretion. *United States v. Brehm*, 442 F.3d 1291, 1298 (11th Cir. 2006). A district court may allow a defendant to withdraw a guilty plea after the court has accepted the plea but before it has imposed a sentence if the defendant shows a fair and just reason for the withdrawal. Fed. R.Crim. P. 11(d)(2)(B). We consider four factors when reviewing a court's decision: whether (1) close assistance of counsel was available; (2) the plea was knowing and voluntary; (3) judicial resources would be conserved; and (4) the Government would be prejudiced if the defendant were allowed to withdraw his plea. *United States v. Buckles*, 843 F.2d 469, 472 (11th Cir. 1988).

A guilty plea is knowing and voluntary if the defendant entered the plea without coercion and understood the nature of the charges and the consequences of the plea. *United States v. Brown*, 586 F.3d 1342, 1346 (11th Cir. 2009). When a defendant has received close assistance of counsel and pleaded guilty knowingly and voluntarily, we do not give considerable weight or attention to the third and fourth factors. *United States v. Gonzalez-Mercado*, 808 F.2d 796, 801 (11th Cir. 1987). The good faith, credibility, and weight of a defendant's assertion in support of a motion to withdraw a guilty plea are issues for the court to decide. *Brehm*, 442 F.3d at 1298.

8

The District Court did not abuse its discretion in denying Harrison's request to withdraw his guilty pleas. First, Harrison had close assistance of counsel leading up to his guilty pleas. *See Buckles*, 843 F.2d at 472. Harrison asserts that he did not enjoy the close assistance of counsel because there was a rift between himself and counsel. The record however supports the court's conclusion that his dissatisfaction with his defense counsel's performance was invented post-plea as an argument to support his request to withdraw his pleas. At the plea colloquy, the court asked Harrison whether he felt he had "a sufficient opportunity to talk about [his] case with [the defense counsel] and have him answer any questions," and whether he was satisfied with "the representation [defense counsel] has provided." Harrison answered, "Yes," to both of these questions. S*ee Medlock*, 12 F.3d at 187 (holding that presumption exists that statements made during a plea colloquy are true).

Second, as already discussed, Harrison entered the pleas free from coercion and understood the nature of the charges and the consequences of the pleas. Therefore, pleading guilty was knowing and voluntary. *See Brown,* 586 F.3d at 1346.

### III.

We do not address Harrison's argument that the representation his attorney afforded him failed the Sixth Amendment standard for effective assistance of

counsel.  We do not because experience teaches that a claim of ineffective assistance is best determined in a collateral proceeding brought under 28 U.S.C. § 2255, where a complete evidentiary hearing can be afforded and all of the relevant information weighed.  True, the District Court did hear from counsel, but the testimony was brief and not all consuming.

For the reasons stated in parts I and II of this opinion, the judgment of the District Court is

AFFIRMED.